**Timothy M. BROSNAN,**
**Appellant/Cross–Appellee/Appellee,**

v.

**Margaret BROSNAN, Appellee/Cross–**
**Appellant/Appellant.**

**Nos. 2010–CA–000229–MR, No.2010–**
**CA–000272–MR, No.2010–CA–**
**000849–MR.**

Court of Appeals of Kentucky.

Feb. 3, 2012.

J. Key Schoen, Louisville, KY, for appellant/cross-appellee/appellee.

Harold L. Storment Louisville, KY, for appellee/cross-appellant/appellant.

Before CAPERTON, COMBS and THOMPSON, Judges.

## OPINION

THOMPSON, Judge:

Timothy M. Brosnan appeals and Margaret Brosnan (now Sargent) cross-appeals from a judgment of the Jefferson Family Court entered in their dissolution of marriage action dividing their marital property and debts and awarding maintenance to Margaret. Margaret also appeals from an order of the Jefferson Family Court denying her motion for attorney's fees incurred on appeal.

Timothy alleges that a social worker was erroneously permitted to offer expert opinion regarding whether Margaret suffered from post traumatic stress disorder (PTSD), and that the amount and duration of maintenance awarded to Margaret was an abuse of the family court's discretion. In her cross-appeal, Margaret argues that the family court erred because: (1) it awarded insufficient maintenance; (2) it denied her request to withhold dissolving the marriage until January 1, 2010, to permit joint 2009 tax returns to be filed and require Timothy to pay her one-half of the 2008 tax refund prior to the sale of the marital residence; (3) it improperly divided the parties' bank accounts; (4) it improperly divided the parties' credit card debt; and (5) it did not order Timothy to maintain Margaret on his life insurance policy. Finally, she argues that the family court erred when it failed to advance her attorney's fees incurred for defending the appeal and pursuing her cross-appeal. Af-

ter review of the record, we conclude that there was no reversible error and affirm.

Prior to the hearing, the parties reached an agreement that the marital residence be sold and the equity equally divided. Pending the sale, Timothy was permitted to reside in the residence and was responsible for the mortgage and expenses. Although Margaret's disclosure statement did not provide a mortgage balance or the equity in the residence, Timothy's stated that the parties' equity was $46,000. It was further agreed that Timothy's pension and retirement accounts would be equally divided by qualified domestic relations orders. The issues regarding the division of the remaining marital property and debt, maintenance, and attorney's fees remained for the family court's decision.

Timothy and Margaret married in 1976 and have two adult children. At the time of the hearing, Margaret was fifty-five years old. Her only employment history was as a part-time receptionist earning $11.50 per hour. She is currently unemployed and lives in Iowa with her daughter.

Timothy was fifty-six years old and employed by Ford Motor Company as an electrician. The family court found that he earned a net monthly income of $5,000.

On March 12, 2009, the parties separated following two incidents in the marital home. Margaret testified that in February 2009, she recalled standing in the kitchen with her back to Timothy and awoke vomiting in the bathroom with her head and neck swollen. The second incident occurred on March 9, 2009, when she awoke in a pool of blood with a gash on her head. She testified that she attempted to contact her daughter but Timothy slapped the telephone from her hand. At the time of the incident, Timothy and Margaret were the only occupants in the home. Fifteen staples closed the gash and Margaret was hospitalized for four days.

The family court divided the marital assets other than the marital residence, including the parties' life insurance policies, the Putnam Investments IRA, the parties' personal property, the parties' 2008 income tax refund, and the parties' bank accounts.[1] We discuss the family court's findings.

During the marriage, the parties acquired two life insurance policies. A policy insuring Timothy's life had a cash value of $8,818 and that insuring Margaret's life had a cash value of $2,690. The parties agreed that each party would retain the policy that insures his or her life. To equalize the division, the family court ordered that Timothy pay Margaret $3,060 from his share of the proceeds from the sale of the residence.

The parties acquired a Putnam Investments IRA solely in Timothy's name. The court found that the account was marital property and ordered Timothy to pay Margaret one-half its value, $2,151.45, from his share of the proceeds from the sale of the marital residence.

The court was also requested to divide the parties' 2008 state and federal tax refunds, totaling $8,722, that were deposited into Timothy's checking account. The court found that the refunds were marital property and ordered that the refunds be equally divided between the parties. It ordered that the $4,361 owed to Margaret be paid from the proceeds of the marital residence.

The parties had significant funds in various bank accounts. Timothy was ordered to pay Margaret $8,081.74 within fourteen

1. Although other marital property was divided, the cumulative value of the property was minimal and, therefore, is not mentioned in this opinion.

days of the entry of the judgment representing one-half of the amount in a Fifth Third Bank savings account in his name. Two additional accounts in Timothy's name were identified. Because the family court did not have a recent statement of the account balances, it ordered that Timothy pay Margaret one-half of the proceeds in the two accounts as of the date of trial.

The family court also found that at the time of separation, the parties had $56,002.79 in a joint savings account and that Timothy dissipated $29,839.30 from that account. The family court divided the dissipated funds equally between the parties requiring that Timothy pay Margaret $14,919.65.

To pay the dissipated funds owed by Timothy to Margaret, the family court ordered that he pay the parties' $17,216 credit card debt. It further ordered him to pay $6,311.65 from his share of the proceeds from the sale of the martial residence.

After dividing the marital property and debt, the family court addressed maintenance and attorney's fees. Because Timothy acknowledged that he should pay maintenance to Margaret, the only issues were the amount and duration.

Over Timothy's objection, licensed independent social worker Debra Lacock was permitted to testify regarding her diagnosis and treatment of Margaret. Lacock testified that she obtained her undergraduate degree in social work in 2000 and, later, a master's in clinical social work. After obtaining her masters and two years of supervised training, she became a licensed independent social worker.

When she first saw Margaret in July 2009, Margaret informed her about the incidents in the marital home. Using the DSM–IV–TR, Lacock diagnosed Margaret with PTSD. She opined that Margaret

should continue counseling and is not currently capable of employment. She confirmed that Margaret has a variety of symptoms, including lack of concentration, rapid heartbeat, intense flashbacks, and a high startle response.

Based on the factors set forth in KRS 403.200, the court awarded maintenance in the amount of $2,000 per month until the marital residence is sold and, thereafter, $2,500 per month for a period of fifteen years subject to modification upon a showing of changed circumstances as provided in KRS 403.250. The Court further ordered Timothy to pay $3,000 of the $11,000 attorney's fees owed by Margaret.

Both parties filed motions to alter or amend. Timothy alleged that the maintenance award was excessive in amount and duration. Margaret requested that her maintenance award be increased to $3,500 per month and to withhold entry of the decree until January 1, 2010, to allow the parties to file a 2009 joint income tax return. Margaret further requested that Timothy be required to maintain her as a beneficiary on his life insurance policy to ensure that she would receive maintenance in the event of his death. She objected to the division of marital debt based on Timothy's higher income and to the amount of the attorney's fees awarded. Both parties' motions were denied and Timothy appealed and Margaret cross-appealed.

After her cross-appeal was filed, Margaret filed a motion in the family court requesting that Timothy be ordered to advance her attorney's fees for the appeal. The family court denied the motion.

■ Timothy's initial contention is that the family court erred when it permitted Lacock to testify that she diagnosed Margaret with PTSD based on the "DSM–IV–

TR." [2] We agree.

■ KRE 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if:

(1) The testimony is based upon sufficient facts or data;

(2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case.

KRE 702 is identical to Rule 702 of the Federal Rules of Evidence and, therefore, the standards for admissibility of expert testimony set forth by the federal court have been adopted in Kentucky. *See Mitchell v. Commonwealth*, 908 S.W.2d 100 (Ky.1995), *overruled on other grounds by Fugate v. Commonwealth*, 993 S.W.2d 931 (Ky.1999). The trial court functions as a "gate keeper" charged with keeping out unreliable, pseudoscientific evidence. *Brown–Forman Corp. v. Upchurch*, 127 S.W.3d 615, 620 (Ky.2004). We reiterate the often recited holding in *Stringer v. Commonwealth*, 956 S.W.2d 883, 891 (Ky. 1997):

Expert opinion evidence is admissible so long as (1) the witness is qualified to render an opinion on the subject matter, (2) the subject matter satisfies the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), (3) the subject matter satisfies the test of relevancy set forth in KRE 401, subject

to the balancing of probativeness against prejudice required by KRE 403, and (4) the opinion will assist the trier of fact per KRE 702.

The question presented is whether Lacock is qualified to express an opinion that Margaret suffers from PTSD. Lacock's professional qualifications are that she has a master's degree in social work and is licensed in Iowa as an independent social worker. Timothy argues that Lacock was not qualified to express a medical opinion regarding Margaret's psychological symptoms or diagnosis. Based on established precedent, we agree.

Written in the context of expert testimony regarding whether children have been sexually abused, case law supports Timothy's contention that Lacock was not qualified to diagnose psychological disorders. In *Hellstrom v. Commonwealth*, 825 S.W.2d 612 (Ky.1992), the Court held that a social worker was not qualified to testify regarding the credibility of a child's statement made during evaluation. The Court noted that although the purported expert was trained in the area of social work, he was not a physician, a psychiatrist, nor a psychologist trained in diagnosing the cause of mental distress. *Id.* at 614.

In *R.C. v. Commonwealth*, 101 S.W.3d 897 (Ky.App.2002), the Court considered the argument that a licensed clinical social worker as defined in KRS 335.100 was qualified to express an opinion regarding a psychological diagnosis or symptoms. It rejected the contention that the Supreme Court had modified its holding in *Hellstrom* and reaffirmed the rule that an expert witness must be qualified to express an opinion on the issue. *Id.* at 900–01. The Court held that *Hellstrom* controlled and

---

**2.** Although some of the Civil Rules, statutes, and case law refer to trial courts, for clarity and because this is an appeal from a family court, we refer to a trial court as a family court throughout this opinion.

that a licensed clinical social worker was not qualified to express an opinion that the child exhibited signs of sexual abuse. *Id.*

In the present case, we conclude that the family court abused its discretion when it permitted Lacock to opine that Margaret suffers from PTSD. Lacock has an impressive educational *vita* in social work. However, she is not trained as a psychologist or psychiatrist. Because she lacks the appropriate education and training to diagnose psychological disorders, including PTSD, her testimony that she diagnosed Margaret with PTSD was inadmissible.

■ The question remains whether the admission of the testimony requires reversal because it was considered by the family court when determining the amount and duration of the maintenance award. We conclude that there was substantial admissible evidence to support the maintenance award and affirm.

■ We begin with the established standard of review of maintenance awards. "[T]he amount and duration of maintenance is within the sound discretion of the trial court." *Weldon v. Weldon,* 957 S.W.2d 283, 285 (Ky.App.1997). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Sexton v. Sexton,* 125 S.W.3d 258, 272 (Ky.2004) (quoting *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999) (citations omitted)). Because Timothy conceded that Margaret was entitled to maintenance, only the amount and duration is questioned.

The parties were married for thirty-three years during which time Margaret's primary job was as a homemaker. At age 55, when the dissolution decree was entered, she had extremely limited employment skills as evidenced by her last employment where she earned $11.50 per hour. At the time of the decree, she resided with her daughter in Iowa and was unemployed.

Although the family court erroneously admitted Lacock's testimony, its findings as to the duration of maintenance were expressly based on the factors set forth in KRS 403.200. The court stated:

> Considering the factors set forth in KRS 403.200(2), the Court believes that this case warrants an award of long-term maintenance. The Court believes that a long-term maintenance award is appropriate based on [Margaret's] age and the standard of living established during the marriage.

Notably, the family court did not rely on Lacock's testimony when considering the duration of the award. Therefore, we conclude that the admission of her testimony was harmless error.

Pursuant to the fifteen-year award, Margaret will receive maintenance past the age of 65. In *Weldon,* 957 S.W.2d at 286, the Court criticized an award without considering the parties' financial positions at retirement. In this case, the parties agreed to an equal division of Timothy's pension benefits but have not cited to this Court the record where the value of the benefits is stated or when benefits are payable. However, the family court specifically stated that its award is modifiable upon showing a change of condition, including Timothy's retirement, Margaret's employment, or receipt of social security and Medicare benefits. Under the circumstances, the family court did not abuse its discretion.

■ Finally, as to the amount of maintenance, Timothy argues that he is unable to meet his maintenance obligation while meeting his own reasonable needs. The family court made express findings regarding this issue. It found that Timothy's net

income was sufficient to meet his current obligation of $2,000 per month and his reasonable monthly expenses of $3,800 per month. It further found that after the residence is sold, he can decrease his expenses and be able to pay $2,500 per month. The family court properly considered Timothy's ability to pay maintenance while meeting his own reasonable needs. We conclude that it did not abuse its discretion.

Margaret's argument that she was entitled to maintenance in the amount of $3,500 per month is likewise reviewed under an abuse of discretion standard. As revealed by our discussion of the issues presented by Timothy, the family court considered the factors set forth in KRS 403.200 when considering the amount and duration of the award. We conclude there was no abuse of discretion.

■ In her cross-appeal, Margaret further alleges that the family court erred when it denied her request to withhold dissolving the marriage until after January 1, 2010, to permit the filing of joint 2009 tax returns and require Timothy to pay her one-half of the 2008 tax refund prior to the sale of the marital residence. She further alleges that the parties' bank accounts should have been divided on the date of separation and that Timothy should have been required to maintain her as a beneficiary on his life insurance policy. Finally, she objects to the division of the martial credit card debt in equal proportions.

Again, our review is governed by the abuse of discretion standard. *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 523 (Ky.2001). The family court acted within its discretion when it declined to withhold dissolution of the marriage until 2010 and delay Timothy's obligation to pay Margaret much of her share of the marital property until after the marital residence is sold. More-over, although not required to accomplish an equitable division of property pursuant to KRS 403.190, because of the duration of the marriage, the contribution of each party, the lack of nonmarital property awarded, and the parties' economic circumstances, the family court found that an equitable division was an equal division. We conclude that there was no abuse of discretion in either the division of property or debt. The remaining issues presented in Margaret's cross-appeal likewise fail under the abuse of discretion standard.

The final issue discussed pertains to the family court's denial of Margaret's motion to advance her attorney's fees to defend Timothy's appeal and prosecute her cross-appeal. After Timothy filed his notice of appeal and after Margaret filed her cross-appeal, Margaret filed a motion in the family court requesting she be advanced attorney's fees for the purpose of defending her case on appeal. The circuit court stated that it was unable to find any authority to allow attorney's fees for proceedings in the Court of Appeals and denied her motion, relying on the general rule that, "[a] notice of appeal, when filed, transfers jurisdiction of the case from the circuit court to the appellate court." *Watkins v. Fannin*, 278 S.W.3d 637, 639 (Ky. App.2009). Because Margaret has been represented by counsel throughout this appeal, the question of whether attorney's fees can be advanced for appeal is moot. However, because the issue is "capable of repetition, yet evading review," we nevertheless address the issue. *See Neidlinger*, 52 S.W.3d at 520.

Although there is no Kentucky authority directly on point, there is sufficient authority strongly suggesting attorney's fees may be advanced for the purpose of defending an appeal in a dissolution of marriage action.

KRS 403.220 provides in part:

The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

In *Maynard v. Maynard,* 251 S.W.2d 454 (Ky.1952), an appeal was taken from a judgment awarding attorney's fees incurred in defending an appeal of a maintenance award. The Court succinctly phrased the issue presented:

We are ... faced first with the question of whether the trial court had the right to determine the collateral matter of allowance of an attorney's fee after reversal and upon return of this case to the circuit court, or whether the circuit court was confined solely to consideration of the matters which were in issue on the appeal.

*Id.* at 455.

The court observed that long ago it was written:

[A]n appeal does not necessarily deprive the lower court of all jurisdiction, so as to prevent absolutely any action, even though such action does not affect the matters involved on the appeal and exclusively committed to the reviewing court. On the contrary, the case is often regarded as pending in the court of original jurisdiction for the purposes of proceedings other than such as pertain to the subject-matter of the judgment itself, or to the appeal and the proper hearing thereof, and concerning collateral or incidental matters necessary for the preservation of the fruits of the ultimate judgment, or affecting the status in quo of the parties.

*Id.* at 455–56 (quoting *Garnett v. Oliver,* 242 Ky. 25, 45 S.W.2d 815, 816 (1931)). Relying on *Garnett,* the Court stated:

We are of opinion that the original appeal in this case did not deprive the circuit court of jurisdiction of matters which were not involved on the appeal and which were collateral to the main issue in the case.

*Id.* at 456. Finally, the court held that the issue regarding attorney's fees for an appeal is not properly presented in an appeal to a reviewing court but is left to the discretion of the family court. *Id.*

■ Based on *Maynard,* we are persuaded that attorney's fees for an appeal of a judgment entered in a dissolution of marriage proceeding is a collateral matter over which the family court retains jurisdiction after the filing of a notice of appeal. Indeed, a party would not know to request attorney's fees until after the notice of appeal is filed. The question remains whether the family court may order the fees prospectively.

Interpreting the KRS 403.220 broadly, in *Neidlinger,* the court held that the family court has the authority to award prospective attorney's fees. It reasoned:

The purpose of KRS 403.220 is to prevent one party to a divorce action from controlling the outcome solely because he or she is in a position of financial superiority, whether because he/she has control of the marital assets or because he/she has the more lucrative position of employment. In that circumstance, the legislature has authorized the presiding judge to order the financially superior party to bear the cost of the litigation, including the other party's reasonable attorney's fees. If that authority were limited to attorney's fees already incurred, access to the courts could be effectively denied to a party with insuffi-

cient funds to retain counsel in the first place.

*Id.* at 521.

The same logic would apply when an appeal is filed. If a party is denied attorney's fees to defend or file an appeal, the purpose of KRS 403.220 would be negated by the party with superior financial ability to hire counsel at the appellate level. We are aware that prospective attorney's fees are inherently uncertain. However, as the Court in *Neidlinger* suggested, the family court retains jurisdiction to award incremental attorney's fees.

As with reimbursement of fees already incurred, an assignment of prospective attorney's fees rests in the sound discretion of the trial court. In the latter instance, however, this discretion must be even more carefully exercised. In awarding prospective attorney's fees, the trial court should consider the possibility that the case might be settled or that the parties might reconcile before the awarded fee is actually earned. The statutory language "from time to time" anticipates the appropriateness in a particular case of requiring that the fee, whether prospective or already incurred, be paid in increments rather than in a lump sum. Uniform Marriage and Divorce Act, *su-pra* note 3, § 313, at 450 (Official Comment).

*Id.* at 521. Additionally, we point out that after the appeal is completed, the family court retains the jurisdiction to alter its previous award, including reimbursement of any unjustified amounts awarded, including for a frivolous appeal or if attorney's fees are no longer warranted because of the appellate decision. For the reasons stated, we conclude that the family court erred when it found that it lacked jurisdiction to advance attorney's fees to Margaret related to this appeal.

Because we hold that the family court did not lose jurisdiction when the notice of appeal was filed and, in accordance with *Maynard*, Margaret shall be permitted to file a motion requesting attorney's fees incurred as result of this appeal pursuant to KRS 403.220.

Based on the foregoing, the judgment of the Jefferson Family Court is affirmed.

CAPERTON, Judge, Concurs.

COMBS, Judge, Concurs in Result Only.