RENDERED: SEPTEMBER 25, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1530-MR
AND
NO. 2018-CA-1842-MR

LOUISA W. HENSON, EXECUTRIX
OF THE ESTATE OF THEODORE
L. MUSSLER, JR.                                          APPELLANT


APPEALS FROM JEFFERSON CIRCUIT COURT
FAMILY DIVISION
v.            HONORABLE A. CHRISTINE WARD, JUDGE
ACTION NO. 91-FD-000314


MARGARET E. MUSSLER AND
HAROLD L. STORMENT                                      APPELLEES


OPINION
AFFIRMING IN PART,
REVERSING IN PART, AND
REMANDING

** ** ** ** **

BEFORE: JONES, MAZE, AND L. THOMPSON, JUDGES.

MAZE, JUDGE:   These consolidated appeals challenge orders of the Jefferson Family Court which denied the decedent Theodore Mussler's motion to modify maintenance, granted appellee Margaret Mussler's motion to hold Mr. Mussler in contempt for failure to pay maintenance and interest, and awarded attorney's fees to Margaret's counsel, appellee Harold Storment.  We affirm in part, reverse in part, and remand.

## FACTS

Pursuant to a property settlement agreement executed in 1992, Mr. Mussler (hereinafter "Ted") agreed to pay Margaret the sum of $3,500.00 per month until her death, remarriage, cohabitation with a non-relative adult male, or further order of court.  In 2011, Ted moved to terminate or modify his maintenance obligation.  After a hearing, the family court entered a 2013 order reducing his maintenance obligation from $3,500.00 to $2,614.00, stemming in part from Margaret's receipt of Social Security benefits.  Both parties appealed from the entry of that order.  During the pendency of those appeals, the parties reached a settlement agreement after which the family court in January 2014 entered an agreed order reducing Ted's maintenance obligation to the current amount of $2,800.00 per month.

Alleging that Ted had unilaterally ceased making maintenance payments, Margaret garnished Ted's bank accounts in March 2016.  Thereafter,

Ted filed a May 2016 motion to reduce or terminate his maintenance obligation alleging that due to deteriorating health, advanced age, and declining income, he was no longer able to satisfy the obligation. After a series of motions to compel production of documents and for contempt, as well as a motion by Ted's then-wife, appellant Louisa Henson, to quash a subpoena duces tecum concerning her financial records, the family court conducted three hearings in this matter. A December 2017 hearing produced an order directing the parties to brief the issue of how to interpret and apply KRS[1] 403.250 to Ted's motion to terminate or reduce maintenance, specifically whether any change in circumstances was to be measured from the date of the original decree or the date of the 2014 agreed order reducing maintenance to the current amount. By order entered in March 2018, the family court concluded that the appropriate measure was from the most recent order modifying maintenance.

After conducting additional hearings in March and August 2018, the family court entered orders 1) denying Ted's motion to terminate maintenance; 2) granting Margaret's motion to hold Ted in contempt for failure to timely satisfy maintenance payments and awarding Margaret a judgment amounting to $78,400.00 for previously accrued maintenance payments; 3) granting Margaret's motion for contempt for failure to comply with an April 2005 order requiring Ted

---

[1] Kentucky Revised Statute.

to pay interest on a previous arrearage and awarding Margaret the sum of $7,932.19 for that arrearage; and 4) awarding Margaret's counsel the sum of $37,712.50 in attorney's fees. Because Ted passed away during the pendency of his appeals from those orders, Louisa Henson, Ted's widow and executrix of his estate, was substituted as appellant.

Louisa advances four arguments to support her contention that the decision below must be set aside: 1) that the family court erred in evaluating Ted's claim of changed circumstances from the date of the 2014 agreed order, rather than the date of the original decree; 2) that the family court abused its discretion in refusing to terminate maintenance on the basis of changed circumstances; 3) that the family court abused its discretion in holding Ted in contempt for failure to meet his maintenance obligation; and 4) that the award of attorney's fees was not only an abuse of discretion, but contrary to law. Because these appeals center on Ted's alleged right to be relieved of his maintenance obligation, our review necessarily focuses upon KRS 403.250(1) and its mandate that "the provisions of any decree respecting maintenance may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." With the dictates of that statute in mind, we turn to an examination of the arguments pressed for reversal.

## I. DID THE FAMILY COURT USE THE CORRECT MEASURE IN EVALUATING CHANGED CIRCUMSTANCES?

Louisa first maintains that the family court misconstrued the decision of this Court in *Wheeler v. Wheeler*, 154 S.W.3d 291 (Ky. App. 2004), which addressed the calculation of changed circumstances in terms of *res judicata*:

> As a general rule, *res judicata* precludes the relitigation of issues that have been previously decided between two or more parties. In the context of motions to modify spousal maintenance, there is considerable support for the proposition that "[w]here the court has decided one petition for modification, the order entered in that proceeding is *res judicata*, and a second petition for modification thus cannot be entertained unless it can be shown that there has been a substantial change of circumstances since the earlier decision was made." In *Micheu v. Micheu*, [440 So.2d 240, 242 (La. Ct. App. 1983)], the Louisiana Court of Appeals framed the issue as follows:
>
>> The determination, then, to be made is—has a substantial change of circumstances occurred since the award of alimony, or since the last change in that award? This analysis is to be made each time either spouse files a rule to increase, decrease, or terminate alimony previously granted.

*Id*. at 293-94 (footnotes omitted). The *Wheeler* Court further clarified the rationale for its holding in a footnote to the *Micheu* citation:

> *See also Hosford v. Hosfo*rd, 362 So.2d 973, 974 (Fla. Ct. App. 1978) (holding that "[o]nce the court has found sufficient change in circumstances to require modification and thereupon enters an order, the facts and circumstances supporting that modification may not be

-5-

revisited by the court as a basis for further modification"); *Marriott v. Marriott*, 347 Ill. App. 372, 106 N.E.2d 876, 878 (1952) (stating that a previous order granting a modification of maintenance was *res judicata*, and that the circumstances which justified the original modification could not be used to support a subsequent motion to modify); and *Farnsworth v. Farnsworth*, 553 S.W.2d 485, 487 (Mo. Ct. App. 1977) (holding that "**the date of the change of circumstances to be used would be the last prior modification rather than the circumstances existing on the date of the original decree**").

*Id*. at 294 n.8 (emphasis added).   Critical to our inquiry, the *Wheeler* Court found that, unlike the situation in *Micheu*, *Hosford*, *Marriott*, and *Farnsworth*, there had been no modification of the original decree because the trial court had denied the motion for an increase in maintenance.  In this case, however, an agreed order decreasing Ted's maintenance was entered in January 2014.  Thus, the family court correctly applied the holding in *Wheeler* by using the date of the most recent modification order to determine whether Ted had demonstrated "changed circumstances so substantial and continuing" as to make the terms of the most recent maintenance order unconscionable.

II.  <u>DID THE FAMILY COURT ABUSE ITS DISCRETION IN CONCLUDING THAT TED FAILED TO PROVE CHANGED CIRCUMSTANCES?</u>

Next, Louisa argues that even if the family court used the proper measure, Ted clearly demonstrated the requisite change of circumstances such that the family court's denial of his motion to terminate maintenance constituted an

abuse of discretion. In explaining its basis for denying Ted's motion, the family court noted that while Ted's evidence supported his contention that his health had continued to deteriorate since the January 2014 modification, it did not support his contention that his deteriorating health had rendered him incapable of meeting his monthly maintenance obligation. The family court made specific reference to the fact that during this time Ted made a $155,293.98 down payment on a new residence, secured a loan of $750,000.00, and maintained two homes for over a year. As to the alleged unprofitability of Ted's law practice, the family court found that, despite the contention that there was no cash flow available, Louisa testified that she withdrew almost $20,000.00 from the business account and placed it in her personal account to protect it from Margaret's garnishment. She also admitted to providing a law office employee with a $1,000.00 bonus around the same time that Ted stopped making maintenance payments. Contrary to Ted's contention that he would have retired and closed the law practice but for his maintenance obligation, the family court found that the law practice and unrepaid "loans" Louisa made to that entity provided them with substantial tax deductions over the years and allowed them the benefits of health insurance and other resources deductible as expenses to the firm. Most importantly, however, the family court found that nothing about the viability of the law practice had changed since the entry of the agreed modification order in 2014.

Furthermore, the family court found that at the time of the hearing Margaret was 79 years old, was in poor health having been diagnosed with chronic obstructive pulmonary disease and congestive health failure, and that she is also blind in one eye. The court found that in addition to the $2,800.00 maintenance payments, Margaret receives $974.00 per month in Social Security payments. Margaret offered proof that an investment account she received as an inheritance had an opening balance in 2017 of $149,578.27 but due to Ted's failure to make his monthly maintenance payments, she has withdrawn approximately $3,000.00 per month to provide for her monthly expenses, reducing the value of the account to $115,848.31 at the time of the hearing. Margaret's 2016 Kentucky tax return showed an income of $30,865.00 with an adjusted gross income of $26,752.00. In April 2016, Margaret sold the marital residence she was awarded in the divorce for $545,000.00, using the proceeds to pay off the mortgage on that home and to purchase a smaller home for $304,000.00 cash. She used part of the remaining $62,305.19 in proceeds to remodel her new residence.

Finding that Margaret had a reasonable expectation of maintenance from the entry of the 2014 agreed order, the family court cited *Barbarine v. Barbarine*, 925 S.W.2d 831 (Ky. App. 1996), for its recognition of the fact that the concept of maintaining relative stability underpins KRS 403.250's stringent modification requirements. Pertinent to our review, *Barbarine* makes clear that:

> Evidence for the movant must be compelling for the trial court to grant the relief requested; the policy of the statute is for relative stability. The determination of questions regarding maintenance is a matter which has traditionally been delegated to the sound and broad discretion of the trial court, and an appellate court will not disturb the trial court absent an abuse of discretion. An appellate court is not authorized to substitute its own judgment for that of the trial court where the trial court's decision is supported by substantial evidence.

*Id*. at 832 (citations omitted). Because we conclude that substantial evidence supported the family court's finding that Ted failed to show changed circumstances since the 2014 order so compelling as to make the terms of that order unconscionable, we perceive no basis upon which we might set aside its denial of Ted's motion to terminate maintenance.

### III.  DID THE FAMILY COURT ABUSE ITS DISCRETION IN FINDING TED TO BE IN CONTEMPT?

Turning now to the contention that the trial court abused its discretion with respect to contempt, Louisa cites *Lewis v. Lewis*, 875 S.W.2d 862 (Ky. 1993), for its holding that the power of contempt cannot be used to compel the doing of an impossible act. Based upon the same evidence that supported its denial of his motion to terminate his liability, the family court specifically found Ted's assertions that he could not satisfy his maintenance obligation unpersuasive. The family court was convinced that although Ted retained the ability to make his maintenance payments, he simply chose not to do so. Appellate courts review a

-9-

trial court's exercise of its contempt powers for abuse of discretion, *Id.* at 864, but

apply the clear error standard to the underlying findings of fact. *Blakeman v.*

*Schneider*, 864 S.W.2d 903, 905 (Ky. 1993). And, as this Court explained in

*Meyers v. Petrie*, 233 S.W.3d 212 (Ky. App. 2007):

> When a court exercises its contempt powers, it has nearly
> unlimited discretion. *Smith v. City of Loyall*, 702 S.W.2d
> 838, 839 (Ky. App. 1986). Consequently, we will not
> disturb a court's decision regarding contempt absent an
> abuse of its discretion. "The test for abuse of discretion
> is whether the trial [court's] decision was arbitrary,
> unreasonable, unfair, or unsupported by sound legal
> principles." *Commonwealth v. English*, 993 S.W.2d 941,
> 945 (Ky. 1999) (citations omitted).

*Id*. at 215. *Meyers* also explains that "[a]n individual who has refused to abide by

a court's order has committed civil contempt." *Id*. (citing *Newsome v.*

*Commonwealth*, 35 S.W.3d 836, 839 (Ky. App. 2001)). We perceive no abuse of

the family court's wide discretion in holding Ted in contempt. His unilateral

termination of maintenance and interest payments coupled with his failure to

provide an adequate legal basis for failing to comply with his obligation under the

2014 maintenance order and the 2005 order mandating interest payments clearly

fall within the category of contemptuous conduct.

## IV.  WAS THE AWARD OF ATTORNEY'S FEES ERRONEOUS AS A MATTER OF LAW?

Finally, we come to the issue of attorney's fees. The family court

made two separate awards of attorney's fees: 1) in the amount of $22,712.50 as an

equitable sanction related to its finding of contempt; and 2) in the amount of $15,000.00 in prospective attorney's fees under KRS 403.220. For the reasons that follow, we reverse the award of attorney's fees related to the contempt award and affirm the award of fees under KRS 403.220.

In *Seeger v. Lanham*, 542 S.W.3d 286 (Ky. 2018), the Supreme Court of Kentucky clearly set out the circumstances under which an award of attorney's fees is appropriate:

> Under the American rule, "attorney's fees in Kentucky are not awarded as costs to the prevailing party unless there is a statute permitting it or as a term of a contractual agreement between the parties." [*Bell v. Commonwealth,* 423 S.W.3d 742, 748 (Ky. 2014)]. While attorneys' fees are awardable as a sanction "when the very integrity of the *court* is in issue," *id*. at 749 (emphasis original), "trial courts may not award attorney's fees just because they think it is the right thing to do in a given case." *Id*. at 750.
> Thus, we take this opportunity to clarify that, without a sound basis in contract or statute, a trial court may not award attorneys' fees. **The trial court is still empowered to order a party to pay attorneys' fees as a sanction, but only when the integrity of the court is at stake**.

*Id*. at 295 (emphasis in bold added). It is clear from a reading of the family court's order regarding the award of attorney's fees as a sanction for contempt that it was exercising its equitable power to compensate Margaret for losses incurred by reason of Ted's contemptuous conduct and not to vindicate its authority or integrity.

We note that although "[t]he courts of the Commonwealth were previously empowered to award attorneys' fees as an equitable measure, when, within the discretion of the court, it was deemed appropriate," *Seeger* made clear that in "instances where attorney's fees are appropriate as a sanction, it is not for the benefit of the individual plaintiff, but because there has been an intrusion on the very power of the court." *Bell*, 423 S.W.3d at 749. Because the family court made no finding of any such intrusion on its authority or integrity, we reverse the award of attorney's fees amounting to $22,712.50 as a contempt sanction.

Regarding the award of prospective attorney's fees, however, we find no error. The family court determined that given Ted's superior financial situation, such an award was appropriate, citing *Bosnan v. Bosnan*, 359 S.W.3d 480 (Ky. App. 2012), for its holding that attorney's fees may be advanced under the authority of KRS 403.220 for the purpose of defending an appeal in a dissolution action. "[W]here the trial court exercises its discretion, its decision is reviewed for an abuse of discretion" and "'[t]he test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Weber v. Lambe*, 513 S.W.3d 912, 915 (Ky. 2017) (citing *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)). The family court specifically found that Ted's assets placed him in a superior position with regard to the prosecution of an appeal and that an award of prospective attorney's

fees was appropriate in order to allow Margaret to "fully and fairly litigate her case."  Nothing in that determination can be said to be "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."  As this Court emphasized in *Bosnan*, "[i]f a party is denied attorney's fees to defend or file an appeal, the purpose of KRS 403.220 would be negated by the party with superior financial ability to hire counsel at the appellate level."  359 S.W.3d at 488.

Because this case is being remanded on the issue of attorney's fees, we emphasize that nothing in our decision precludes the family court from reconsidering the amount of prospective attorney's fees awarded under KRS 403.220 and adjusting the amount awarded to ensure that the goal of its previous order allowing Margaret to "fully and fairly litigate her case" has been accomplished.  *Bosnan* carefully explained this very concept:

> We are aware that prospective attorney's fees are inherently uncertain.  However, as the Court in *Neidlinger* suggested, the family court retains jurisdiction to award incremental attorney's fees.
>
>> As with reimbursement of fees already incurred, an assignment of prospective attorney's fees rests in the sound discretion of the trial court.  In the latter instance, however, this discretion must be even more carefully exercised.  In awarding prospective attorney's fees, the trial court should consider the possibility that the case might be settled or that the parties might reconcile before the awarded fee is actually earned.  The statutory language "from time to time"

-13-

> anticipates the appropriateness in a particular case of requiring that the fee, whether prospective or already incurred, be paid in increments rather than in a lump sum. Uniform Marriage and Divorce Act, *supra* note 3, § 313, at 450 (Official Comment).
>
> *Id*. at 521. Additionally, **we point out that after the appeal is completed, the family court retains the jurisdiction to alter its previous award**, including reimbursement of any unjustified amounts awarded, including for a frivolous appeal or if attorney's fees are no longer warranted because of the appellate decision.

*Id*. (emphasis added). That rationale applies equally to an award of additional fees.

CONCLUSION

Accordingly, that portion of the order entered September 24, 2018, awarding attorney's fees in the amount of $22,712.50 as a sanction for contempt is reversed and the case remanded for entry of an appropriate order. In all other respects, the orders of the Jefferson Family Court are affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Patrick J. Walsh
Newport, Kentucky

BRIEF FOR APPELLEES:

Harold L. Storment
Louisville, Kentucky