v.

COMMONWEALTH of Kentucky, Cabinet for Families and Children; S.C.; and I.C., Appellees.

No. 2001–CA–001080–DG.

Court of Appeals of Kentucky.

July 13, 2002.

Discretionary Review Denied April 17, 2003.

1. In the interest of the parties' privacy, and in accordance with this Court's policy, the parents and children shall be referred to only by their initials.

Natalie S. Wilson, Elizabeth S. Hughes, Gess Mattingly & Atchison, PSC, Lexington, KY, for appellant.

Duane F. Osborne, Assistant Fayette County Attorney, Stephen D. Milner, Hughes, Lowry, Milner & Hayworth, Lexington, KY, for appellees.

Before BUCKINGHAM, KNOPF, and SCHRODER, Judges.

## OPINION

KNOPF, Judge.

This matter came before the Court on discretionary review by R.C. R.C. seeks review of an order of the Fayette Circuit Court affirming an order by the juvenile branch of the Fayette District Court which concluded that his daughter, I.C., is an abused child within the meaning of KRS 600.020. R.C. argues that the trial court erred by allowing a licenced clinical social worker to express an opinion that the child's symptoms were indicative of sexual abuse. He further argues that the trial court erred by allowing I.C.'s mother to testify regarding the child's out-of-court statements. We agree with both arguments. Hence, we reverse the finding that I.C. is an abused child, and we remand this matter to the juvenile branch of the Fayette District Court for a new hearing.

R.C. and S.C. were married in 1992. Three children were born of the marriage: a son, L.C. (age 7 at the time of the hearing); and two daughters, I.C. (age 5 at the time of the hearing), and A.C. (age 3 at the time of the hearing). R.C. and S.C. divorced in 1999 and were awarded joint custody of the children. Although S.C. was designated as the children's residential custodian, R.C. had frequent visits with them.

On February 18, 2000, S.C. was called to Ashland to attend to her dying brother. She asked R.C. and his new wife E.C. to keep I.C. and A.C. R.C. and E.C. kept the

younger two children until Friday, February 25, 2000. On the latter date, E.C. drove I.C. and A.C. from Lexington to Ashland to return the children to S.C. The following day, S.C. and all three children returned to Lexington.

S.C. testified that during the evening of Sunday, February 27, 2000, I.C. was very anxious and unwilling to go to sleep. S.C. told I.C. that she was going to tuck in L.C., but that she would return to lay down beside I.C. S.C. then turned out the light and left the room. S.C. testified that when she returned to the room, I.C. was startled and shouted to her mother, "you're not going to spank me, are you?" S.C. responded, "no honey, I'm coming to lay with you. I told you I was going to come back and lay with you." According to S.C., I.C. then told her that she was startled because her father takes her panties off when he spanks her "goop." [2] S.C. testified that I.C. further told her that R.C. "feeds on her goop", "bites her goop" and "peed on her goop" when playing a "dragon" game.

S.C. contacted R.C. on February 28 and asked him about I.C.'s statements. He denied that I.C. had been exposed to any sexually oriented materials which might explain her statements. Shortly thereafter, S.C. took I.C. to a psychologist at the Woodland Group, Bonnie Hall–Polus. After S.C. told Hall–Polus what I.C. had said, Hall–Polus told S.C. to report the matter to the Cabinet for Families and Children (the Cabinet). On March 3, 2000, S.C. filed a report with the Cabinet, which then proceeded to investigate the matter.

Thereafter, on April 1, 2000, the Cabinet filed a petition pursuant to KRS 620.070 in the juvenile branch of Fayette District Court. The Cabinet sought a finding that I.C. was an abused child within the meaning of KRS 600.020(1). In May of 2000, S.C. took I.C. to see Kit Andrews, a licenced clinical social worker. Andrews saw I.C. on seven occasions between May and August of 2000. At the hearing, Andrews testified, over R.C.'s objection, that I.C. exhibited signs of a sexually abused child. She stated that those signs were anxiety, being tense, bedwetting, nightmares, and depression. Andrews further testified that she had observed I.C. act out sexually on one occasion. S.C. also testified that she had observed these behaviors on the part of I.C. both before and after February 27, 2000.

At the conclusion of the hearing, the trial judge found that the Cabinet had established by a preponderance of the evidence that I.C. is an abused child. R.C. appealed from this determination to the Fayette Circuit Court. He argued that the trial court erred by allowing S.C. to testify regarding the out-of-court statements made by I.C., and by allowing Andrews to state her opinion that I.C. had been sexually abused. The circuit court rejected both arguments, finding as follows:

> The Court finds that the evidence in question was properly admitted. The statements made by the child to the mother fall within the excited utterance exception to the hearsay rule. Further, the admission of the opinion testimony of the licenced clinical social worker is supported by statutory changes in KRS 600.020 and the holding in *Stringer v. Commonwealth,* KY., 956 S.W.2d 883 (1997).

Consequently, the circuit court affirmed the trial court's finding of abuse. On July 24, 2001, this Court granted R.C.'s motion for discretionary review.

---

**2.** Testimony by both S.C. and E.C. established that "goop" is the child's word for vagina.

■ First, R.C. again argues that Andrews was not qualified to express an opinion regarding I.C.'s psychological symptoms or diagnoses. We agree. In *Hellstrom v. Commonwealth*,[3] our Supreme Court held that it was improper for a social worker to vouch for the truth of a victim's account because social workers are not experts qualified to testify to the credibility of a child's statement made during evaluation. The Court further noted that a social worker who is neither a physician, a psychiatrist, nor a psychologist trained in diagnosing the cause of a child's mental distress is not qualified to express an opinion that the child's symptoms were indicative of sexual abuse.

The Cabinet responds, and the circuit court agreed that the rule in *Hellstrom* has been modified by the subsequent Supreme Court decision in *Stringer v. Commonwealth*,[4] and by the 1996 amendment of KRS 600.020(1). We find neither argument convincing. In *Stringer v. Commonwealth*, our Supreme Court resolved conflicting authority concerning the admissibility of an expert's opinion as to the ultimate issue. The Court held that, under KRE 702, the pertinent question is whether the opinion will assist the trier of fact to understand the evidence or to determine a fact in issue.[5]

■ Nevertheless, the Court did not alter the rule that the expert witness must be qualified to express an opinion on the issue. Expert opinion evidence is admissible so long as: (1) the witness is qualified to render an opinion on the subject matter; (2) the subject matter satisfies the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*;[6] (3) the subject matter satisfies the test of relevancy set forth in KRE 401, subject to the balancing of probativeness against prejudice required by KRE 403; and (4) the opinion will assist the trier of fact per KRE 702.[7] Under this test, the expert still must be qualified to express an opinion on the subject matter.

In 1996, the General Assembly amended the definition of "qualified mental health professional" which is currently set out in KRS 600.020(47).[8] For purposes of the Unified Juvenile Code, the statute now defines "qualified mental health professional" to mean: (a) a physician; (b) a psychiatrist; (c) a Ph.D.-level psychologist or certified master's level psychologist; (d) a registered nurse with a master's degree in psychiatric nursing; or

(e) A licensed clinical social worker licensed under the provisions of KRS 335.100, or a certified social worker licenced under the provisions of KRS 335.080 with three (3) years of inpatient or outpatient clinical experience in psychiatric social work and currently employed by a hospital or forensic psychiatric facility licensed by the Commonwealth or a psychiatric unit of a general hospital or a regional comprehensive care center.

The Cabinet argues that this amendment demonstrates the General Assembly's intention to overrule *Hellstrom* and to allow a licenced clinical social worker to express an opinion regarding sexual abuse. However, there are a number of factors which militate against such an interpretation of the statute. First, the definition of "qualified mental health professional"

---

3. Ky., 825 S.W.2d 612, 614 (1992).

4. *Supra*.

5. *Id.* at 889.

6. 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

7. *Stringer*, 956 S.W.2d at 891.

8. 1996 *Ky. Acts* 369, § 21.

which was in effect when *Hellstrom* was decided included "a certified clinical social worker" or a "certified social worker" with the same qualifications as set out in the current version of KRS 600.020(47). Nevertheless, the Court in *Hellstrom* did not consider that this section qualified the clinical social worker to express an opinion that the child in that case had been sexually abused.

Second, the chapter of the 1996 legislation containing the amendment[9] relates to the regulation of social workers. Other sections of that chapter modified the training and licensing requirements for social workers set out in KRS Chapter 335. In particular, § 12 of that chapter authorizes the Kentucky Board of Social Work to issue a license for a "licensed clinical social worker" to an applicant who has met the requirements set out in KRS 335.100. The 1996 amendment to the definition of "qualified mental health professional" in KRS 600.020 merely modified the existing definition to include this new category of social worker.

Third, there is nothing in KRS Chapter 620 which suggests that the testimony of a qualified mental health professional is necessary to a finding that a child has been abused, neglected, or dependent. Indeed, the only reference to this term in KRS Chapter 620 is contained in KRS 620.023(1)(a), which states that in determining the best interests of a child, the court shall consider evidence of mental illness or mental retardation, as attested to by a qualified mental health professional, insofar as it renders a parent unable to care for the immediate and ongoing needs of the child. The mere inclusion of a licensed clinical social worker within the definition of qualified mental health professional does not lead us to conclude that the General Assembly intended that such a person be considered qualified as an expert for all purposes.

And finally, even if we could conclude that the General Assembly intended to allow licensed clinical social workers to express an opinion regarding a psychological diagnosis or symptoms, then such an enactment would be a violation of the separation of powers doctrine and hence unconstitutional. KRE 702 vests the trial court with broad discretion to determine whether a witness is qualified to express an opinion in a matter which requires expert knowledge, skill, experience, training, or education. Likewise, the rule requires the trial court to determine if such expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue.[10] The Cabinet's interpretation of KRS 600.020(47) would transgress established procedure relating to the qualification and admission of expert testimony, and would usurp the power of the judiciary to control the rules of evidence.[11] In the absence of any indication that the General Assembly intended such a result, we will not interpret a statute in a manner which would render it unconstitutional. Therefore, we find no basis for concluding that the 1996 amendment to KRS 600.020(47) permits a licensed clinical social worker to express an opinion regarding a diagnosis of sexual abuse, or that Andrews's testimony was admissible under *Stringer v. Commonwealth*. Consequently, we conclude the district court erred by allowing Andrews to express an opinion that I.C. exhibited signs of being a sexually abused child.

9. Chapter 369 of 1996 Kentucky Acts.

10. *Goodyear Tire and Rubber Co. v. Thompson,* Ky., 11 S.W.3d 575, 577–79 (2000).

11. *Drumm v. Commonwealth,* Ky., 783 S.W.2d 380, 382 (1990).

Since we are remanding this matter for a new hearing, we must also address R.C.'s argument that the trial court erred by allowing S.C. to testify regarding the statements allegedly made by I.C. The central issue is whether the statements were admissible under the excited utterance exception to the hearsay rule. Hearsay is not admissible except as provided by the Rules of Evidence.[12] However, a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition is not excluded by the hearsay rule, even though the declarant is available as a witness.[13] This is commonly known as the "excited utterance" exception.

In *Souder v. Commonwealth*,[14] our Supreme Court set out the factors to be weighed in determining whether an out-of-court statement is admissible under KRE 803(2):

(i) lapse of time between the main act and the declaration, (ii) the opportunity or likelihood of fabrication, (iii) the inducement to fabrication, (iv) the actual excitement of the declarant, (v) the place of the declaration, (vi) the presence there of visible results of the act or occurrence to which the utterance relates, (vii) whether the utterance was made in response to a question, and (viii) whether the declaration was against interest or self-serving.[15]

However, these criteria do not pose a true-false test for admissibility, but rather act only as guidelines to be considered in determining admissibility.[16] Whether a particular statement qualifies as an excited utterance depends on the circumstances of each case and is often an arguable point; and "when this is so the trial court's decision to admit or exclude the evidence is entitled to deference." [17] This determination depends upon the resolution of a preliminary question of fact on the basis of a preponderance of the evidence. The trial court's resolution of the issue will not be overturned unless clearly erroneous, i.e., unless unsupported by substantial evidence.[18]

The Cabinet argues that I.C.'s statements were "excited utterances" because she made them after being startled by S.C. returning to her darkened room. However, KRE 803(2) makes it clear that the out-of-court statement must relate to a startling event or condition, and must be made while the declarant was under the stress of excitement caused by the event or condition. Clearly, the "startling event" was not the actual abuse. It could be argued that I.C. associated her mother's return to the darkened room with the alleged acts of abuse. Thus, the startling event would be a trigger for I.C.'s decision to recount the abuse.

The trial court obviously struggled with this problem, stating in its conclusions that at least one of the incidents of abuse appeared to have occurred during the most recent period when I.C. was in R.C.'s possession. Thus, the court concluded that I.C.'s statements were not too remote from the original startling event (the actual acts

---

**12.** KRE 802.

**13.** KRE 803(2).

**14.** Ky., 719 S.W.2d 730, 733 (1986).

**15.** *Id.* at 733; (*quoting* R. Lawson, The Kentucky Evidence Law Handbook § 8.60(B) (2d ed. Michie 1984)).

**16.** *Smith v. Commonwealth,* Ky., 788 S.W.2d 266, 268 (1990).

**17.** *Souder, supra,* at 733.

**18.** *Young v. Commonwealth,* Ky., 50 S.W.3d 148, 167 (2001).

of abuse) as opposed to the "triggering" startling event (S.C.'s return to the darkened room). In finding that the statements were trustworthy and reliable, the trial court was particularly convinced that I.C.'s description of R.C.'s alleged actions was consistent with a child's limited understanding of sexual conduct, and was beyond the likely range of imagination of a four-to-five year old child.

However, the credibility of an out-of-court statement involves a somewhat different issue than the question of whether an out-of-court statement is admissible under the excited utterance exception to the hearsay rule. The mere lapse of time between the actual startling event and the out-of-court statement, although relevant, is not dispositive in the application of KRE 803(2).[19] The focus of the inquiry should be on whether the statements were made as a result of an agitated state of mind not based on any reflection or deliberations.[20]

Thus, in *Souder*, a three-year-old child's statements, given more than twenty-four hours after the alleged incident occurred, and in response to the grandmother's persistent questioning of the child regarding what had happened to her, were too remote and unreliable to qualify under the excited utterance exception to the hearsay rule.[21] Likewise, in *Jarvis v. Commonwealth*,[22] a child's out-of-court statements, made less than fifteen minutes after she witnessed her mother's murder, were not admissible because there was no evidence that the child was still under the stress of the startling event when she made the statements.[23]

However, in *Robey v. Commonwealth*,[24] the rape victim's statement was uttered under the stress of nervous excitement; the incident was so recent that the victim had no opportunity to reflect upon or fabricate her statement. Consequently, the statement was trustworthy because the stress stilled her reflective faculties and removed her control so that her utterance was a spontaneous and sincere response to the actual sensations and perceptions produced by the rape.[25] Similarly, in *Davis v. Commonwealth*,[26] a co-defendant's out-of-court statements that the defendant killed her baby and that she should never have left on the night of murder, made at the hospital shortly after the child's death, qualified for exception to the hearsay rule as excited utterances because she was still under the stress of learning of her child's death.[27]

19. *McClure v. Commonwealth*, Ky.App., 686 S.W.2d 469, 470 (1985).

20. *Robey v. Commonwealth*, Ky., 943 S.W.2d 616, 619 (1997).

21. *Souder*, 719 S.W.2d at 734.

22. Ky., 960 S.W.2d 466 (1998).

23. *Id.* at 470. *See also Young v. Commonwealth*, 50 S.W.3d at 166–67.

24. *Supra*.

25. *Robey*, 943 S.W.2d at 619.

26. Ky., 967 S.W.2d 574 (1998).

27. *Id.* at 578–79. *See also Clark v. Hauck Manufacturing Co.*, Ky., 910 S.W.2d 247 (1995) (Statements made to medical personnel by an injured worker who had suffered severe burns during the course of treatment were admissible as an excited utterance because the worker made them as a result of a highly agitated state of mind based on what he saw happen to him and not based on any reflection or deliberations); and *Wells v. Commonwealth*, Ky., 892 S.W.2d 299 (1995) (A victim's statements that it was defendant who stabbed him, made to 911 operator and paramedic, while the knife was still in his back and to police officer at hospital immediately after being told that his situation was extremely critical and he could die at any moment, were admissible as an excited utterance and a dying declaration).

In this case, I.C.'s initial statement to S.C., "You're not going to spank me, are you?", could be considered to have been made under the stress of nervous excitement, although not directly related to the original startling event. However, there was no evidence of I.C.'s state of mind when she made her subsequent statements which implicated R.C. in the acts of sexual abuse. Given the remoteness of the original startling event, we cannot find that I.C.'s statements were clearly the product of her agitated state rather than reflection or deliberation. Although we are reluctant to reverse the trial court's finding on this matter, we must conclude I.C.'s out-of-court statements were not admissible under the excited utterance exception, and that the trial court and the circuit court erred in so finding.

Because the trial court based its finding that I.C. is an abused child upon inadmissible evidence, that finding must be set aside, and this matter remanded for a new hearing. At any subsequent hearing, the testimony in question shall not be admitted. The trial court shall make a finding of whether I.C. is an abused child based upon the admissible evidence presented at the new hearing.

Accordingly, the judgment of the Fayette Circuit Court which affirmed the finding of the juvenile branch of the Fayette District Court that I.C. is an abused child is reversed, and this matter is remanded to the Fayette District Court for a new hearing consistent with this opinion.

ALL CONCUR.