**COMMONWEALTH of Kentucky, Board of Chiropractic Examiners, Appellant**

v.

**Charles BARLOW, M.D.; Michael Best, M.D.; and Geico General Insurance Company, Appellees.**

**No. 2013–CA–000552–MR.**

Court of Appeals of Kentucky.

June 27, 2014.

Discretionary Review Denied by Supreme Court March 25, 2015.

J. William Graves, Paducah, KY, Brian T. Judy, Frankfort, KY, for appellant.

William D. Kirkland, Frankfort, KY, for appellee, Charles Barlow, M.D.

Daniel G. Brown, Nicholas K. Haynes, Ryan T. Wood, Louisville, KY, for appellee, Michael Best, M.D.

Edward H. Stopher, Raymond G. Smith, Charles H. Stopher, Todd P. Greer, Louisville, KY, for appellee, Geico General Insurance Company.

Joseph E. Lambert, Mount Vernon, KY, Jason Michael Nemes, Louisville, KY, for Kentucky Association Of Chiropractors And Kentucky Chiropractic Society, Amicus Curiae.

Before MOORE, TAYLOR, and VAN METER, Judges.

## OPINION

MOORE, Judge:

The Kentucky Board of Chiropractic Examiners ("Board") sought injunctive relief in Franklin Circuit Court against two physicians, Drs. Charles Barlow and Michael Best. The Franklin Circuit Court dismissed both actions, and the Board now appeals.

The overarching legal issue presented in this consolidated appeal involves two competing interpretations of "peer review," as the term is used in Kentucky Revised Statutes (KRS) 312.015(4) and 312.200. KRS 312.015(4) provides:

"Peer review" means an evaluation, based upon generally accepted standards, by a peer review committee established in KRS 312.200 or by other persons performing peer review pursuant to KRS 312.200(3), of the appropriateness, quality, utilization, and cost of chiropractic health care and health service provided to a patient.

Next, KRS 312.200 (entitled "Peer review committee—Initiation of peer review—Report of findings—Licensure of other persons performing peer review of chiropractic claims") provides:

(1) The board shall appoint a peer review committee not to exceed five (5) doctors of chiropractic licensed under this chapter, none of whom are in direct business relationship with the provider, insurer, or patient whose case is being reviewed. Members of the peer review committee shall serve at the pleasure of the board.

(2) Peer review shall occur upon submission by a patient, the patient's representative, insurer, or chiropractor, in accordance with the procedures and fees approved by the board, of an inquiry about a treatment rendered to a patient by a chiropractor. The peer review committee shall examine each inquiry submitted to it and shall report its findings to the board and furnish copies of the findings to the patient, chiropractor, and third-party payor. The findings of the peer review committee on each inquiry reviewed may include a determination of whether or not the chiropractor properly utilized services and rendered

or ordered appropriate treatment or services and whether or not the cost of the treatment was unconscionable.

(3) Other persons performing peer review of chiropractic claims shall be licensed by the board and complete annually a board approved utilization review course, in addition to the required annual education in KRS 312.175. Persons performing review services under this subsection shall annually register with the board and pay a registration fee not to exceed one hundred dollars ($100).

The appellees interpret these provisions to mean that if a person evaluates the appropriateness, quality, utilization, and cost of health care and health service provided to a patient by a Kentucky chiropractor, but has done so without the license and training described in KRS 312.200(3), and without purporting to do so under the purview of KRS 312.200, that person has not conducted a "peer review" within the meaning of these statutory provisions and is not, therefore, subject to any kind of action or censure from the Board.

The Board, on the other hand, asserts these provisions mean that if any person ever evaluates the appropriateness, quality, utilization, and cost of chiropractic health care and health service provided to a patient of chiropractic services in Kentucky, but does so without the license and additional training described in KRS 312.200(3), that person is conducting an unauthorized "peer review" and is, therefore, subject to injunctive action pursuant to KRS 312.991(3).[1] Stated differently,

1. KRS 312.991(3) provides:

Whenever in the judgment of the board any person has engaged or is about to engage in the acts or practices that constitute, or will constitute, a violation of any of the provisions of this chapter or the rules and regulations adopted by the board, the board may make application to the Franklin Circuit Court for an order enjoining such acts or practices. Upon a showing by the board that such person has engaged, or is about to engage, in any such acts or practices, and injunction, restraining order, or such other order as may be appropriate shall be granted by such court. Any order of the Franklin Circuit Court shall be enforceable and

the Board contends that these statutory provisions lend it the exclusive authority to determine—*in every given circumstance*—who is qualified to evaluate whether or not a Kentucky chiropractor properly utilized services and rendered or ordered appropriate treatment or services and whether or not the cost of the treatment was unconscionable.

Per its interpretation of KRS 312.200(3), the Board unsuccessfully filed suit to enjoin Drs. Barlow and Best from conducting what it characterized as illegal "peer reviews." Specifically, both doctors had rendered opinions to an insurance carrier—appellee Geico Insurance Company—for the purpose of assisting Geico in determining whether to pay or deny personal injury protection (PIP) benefits[2] to individuals involved in motor vehicle accidents. And, as the above would indicate, the Board contended that in doing so the two doctors had violated KRS 312.200(3) because 1) it had not licensed and trained either doctor pursuant to KRS 312.200(3); and 2) both doctors had rendered opinions regarding the reasonableness and necessity of chiropractic treatment and, in its view, had therefore conducted unauthorized "peer

reviews" within the meaning of KRS 312.015(4).

With that said, the Board's interpretation of KRS 312.015(4) and KRS 312.200 has already been rejected outside of these proceedings. Interestingly, one such instance comes not from case law, but from how another agency of the Commonwealth has interpreted its own authorizing legislation. Medical fee disputes are often resolved through administrative processes designed by the Department of Workers' Claims, pursuant to its statutory authority under KRS 342.0011 *et seq.*, in the context of workers' compensation claims. One such administrative process is located in 803 Kentucky Administrative Regulation (KAR) 25:190. Generally speaking, this regulation requires workers' compensation insurers to determine whether medical services that are "reasonably related" to a claim are "medically necessary and appropriate." *See* 803 KAR 25:190 Section 2(b) and Section 5(1). Contrary to the Board's understanding of the law, however, 803 KAR 25:190 does not require a chiropractor licensed pursuant to KRS 312.200(3) to take any part in this form of utilization review where chiropractic treatment is concerned.[3] This regulation only contem-

---

shall be valid anywhere in this state and the order of the court shall be reviewable as provided in the Rules of Civil Procedure in the case of other injunctions and restraining orders.

**2.** PIP is also known as "basic reparations benefits" coverage, or "BRB." These terms are used interchangeably by Kentucky Courts and have the same meaning as no-fault benefits under the Kentucky Motor Vehicle Reparations Act, KRS 304.39–010 *et seq. See Samons v. Kentucky Farm Bureau Mut. Ins. Co.,* 399 S.W.3d 425, 428 (Ky.2013). Essentially, these benefits only cover medical services to the extent that the medical services in question are reasonable in cost and are reasonably needed for the treatment and care of a covered injury. *See* KRS 304.39–020(5)(a).

**3.** 803 KAR 25:190 Section 6 provides in relevant part:

(1) Utilization review personnel shall have education, training, and experience necessary for evaluating the clinical issues and services under review. A physician, registered nurse, licensed practical nurse, medical records technician or other personnel, who through training and experience is qualified to issue decisions on medical necessity or appropriateness, shall issue the initial utilization review approval.

(2) A physician shall issue an initial utilization review denial. A physician shall supervise utilization review personnel in making utilization review recommendations. Personnel shall hold the license required by the jurisdiction in which they are employed.

plates that a Kentucky chiropractor licensed and trained by the Board pursuant to KRS 312.200(3) *may be requested* to play a role in this process *after* two other utilization reviews regarding the chiropractic treatment in question have already been conducted.[4],[5] Thus, if the Board's interpretation of KRS 312.200(3) is the correct one, it would stand for the proposition that the Department of Workers' Claims has been sanctioning and encouraging illegal conduct for the several years that 803 KAR 25:190 has been in effect.

The Board's interpretation has also been rejected in an unpublished opinion from this Court, *Rodriguez v. Kentucky Farm Bureau Mut. Ins. Co.,* 2003 WL 21949164 (Ky.App.2003)(2002–CA–001191–MR, 2002–CA–001229–MR).[6] The appellant in that matter had sought PIP coverage for

$9,010 in chiropractic treatment ostensibly related to injuries he sustained in a motor vehicle accident; his reparations obligor (Farm Bureau) denied all but $3,110 based upon an outside review of the appellant's chiropractor's billings. At trial, Farm Bureau defended its decision to deny all but $3,110 of the appellant's chiropractic expenses by introducing testimony of two expert witness doctors to the effect that the unpaid chiropractic expenses were either unreasonable in cost or represented unnecessary treatment.[7] The appellant moved to exclude this testimony on the basis of KRS 312.200, his motion was overruled, and this Court subsequently affirmed the trial court's decision. In relevant part, this Court explained:

Appellant asserts that Dr. Alan Bragman's testimony should not have been

---

4. In this vein, 803 KAR 25:190 Section 8(2)(a) provides:

If a utilization review *denial* is upheld upon *reconsideration* and a board eligible or certified physician in the appropriate specialty or subspecialty area, or a chiropractor qualified pursuant to KRS 312.200(3) and 201 KAR 21:095 has not previously reviewed the matter, an aggrieved party *may request* further review by:
1. A board eligible or certified physician in the appropriate specialty or subspecialty; or
2. *A chiropractor qualified pursuant to KRS 312.200(3) and 201 KAR 21:095.*
(Emphasis added.)

5. We also note that there are distinctions between a Chapter 312 peer review and a workers' compensation utilization review. For example, unlike the utilization reviews conducted in workers' compensation proceedings which often involve requests for preauthorization of treatment (*see* 803 KAR 25:190 Section 5(a)), the KRS 312.200 peer review process does not contemplate hypothetical or preauthorization situations in which chiropractic services have yet to be rendered and charged for. *See* KRS 312.015(4) (providing that peer review concerns "health care and health service *provided* to a patient"); *see also* KRS 312.200(2)

("The findings of the peer review committee on each inquiry reviewed may include a determination of whether or not the chiropractor properly *utilized* services and *rendered* or *ordered* appropriate treatment or services and whether or not the cost of the treatment *was* unconscionable"). (Emphasis added.)

6. For the proposition of law discussed herein, we find *Rodriguez* to be persuasive authority in this case and proper to cite as it fulfills the criteria of Kentucky Rules of Civil Procedure (CR) 76.28(4)(c).

7. The *Rodriguez* opinion is not as clear as it could be on the specialties of these doctors or the substance of their testimony. The objection to Bragman's testimony in *Rodriguez* was that he did not "qualify as a peer reviewer in Kentucky." *Id.* at *3. The implication from the appellant's objection to the testimony offered by these respective doctors (*i.e.,* that neither doctor was qualified as a "peer reviewer" under KRS 312.200) is that neither doctor was competent to express any opinion on the subjects that the "peer review" process is designed to cover, namely, "[W]hether or not the chiropractor properly utilized services and rendered or ordered appropriate treatment or services and whether or not the cost of the treatment was unconscionable." *See* KRS 312.200(2).

admitted because he does not qualify as a peer reviewer in Kentucky. Similarly, appellant asserts that Dr. L.B. Payne's testimony should not have been admitted because appellant never executed a release permitting a peer review of his records.[8] However, since Bragman and Payne both testified as expert witnesses in regard to their review of appellant's records for purposes of litigation, rather than as peer reviewers of those records for the Kentucky Board of Chiropractors, we are not persuaded that the witnesses' failure to be qualified as peer reviewers was relevant in any way to their qualifications as expert witnesses or to the admissibility of their testimony at trial. Hence, the court did not err by admitting their testimony. *Id.* at *3.

■ What is implicit in *Rodriguez* is an adherence to the following rule of constitutional law and statutory construction: "[I]f a statute is reasonably susceptible to two constructions, one of which renders it unconstitutional, 'the court must adopt the construction which sustains the constitutionality of the statute.'" *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 96 (Ky.2000) (quoting *American Trucking Ass'n v. Commonwealth, Transp. Cabinet*, 676 S.W.2d 785, 789–90 (Ky.1984)). As noted, the *Rodriguez* court drew a distinc-

tion between expert trial testimony and peer review for the Board, determining that the former had nothing to do with the latter. This is because Kentucky Rules of Evidence (KRE) 702 vests the *trial court* with broad discretion to determine whether a witness is qualified to express an opinion in a matter which requires expert knowledge, skill, experience, training, or education. Likewise, the rule requires the *trial court* to determine if such expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue.

The *Rodriguez* appellant's interpretation of KRS 312.200, now being offered by the Board, would limit the trial court's authority under KRE 702. It would prohibit the trial court from allowing any person to testify regarding the reasonableness of the cost and necessity of chiropractic treatment, unless the *Board* authorized it by licensing and training the person in question as provided in KRS 312.200(3). This interpretation would transgress established procedure relating to the qualification and admission of expert testimony; it would usurp the power of the judiciary to control the rules of evidence; and, as such, it would violate the separation of powers and render KRS 312.200(3) unconstitutional.[9] Consequently, the only way to uphold

---

8. This statement is a reference to 201 KAR 21:075 Section 1(a), which prohibits any peer review of a patient's treatment records absent the patient's authorization.

9. For similar reasoning, *see R.C. v. Commonwealth*, 101 S.W.3d 897, 901 (Ky.App.2002). There, a question was presented regarding whether the General Assembly could statutorily override (or whether a particular statute, KRS 600.020(47), could be interpreted to override) the Kentucky Supreme Court's holding in *Hellstrom v. Commonwealth*, 825 S.W.2d 612, 614 (Ky.1992), that social workers are incompetent to offer testimony vouching for the credibility of a child's statement

made during evaluation, and that a social worker who is not a physician, psychiatrist, or psychologist trained in diagnosing the cause of a child's mental distress is not qualified to express an opinion that the child's symptoms were indicative of sexual abuse. Answering this question in the negative, this Court held in relevant part:

[E]ven if we could conclude that the General Assembly intended to allow licensed clinical social workers to express an opinion regarding a psychological diagnosis or symptoms, then such an enactment would be a violation of the separation of powers doctrine and hence unconstitutional. KRE 702 vests the trial court with broad discre-

the constitutionality of this statute would be to interpret it as having no preclusive effect upon the authority of a trial court to qualify an expert witness to offer testimony at trial regarding whether or not a Kentucky chiropractor properly utilized services and rendered or ordered appropriate treatment or services and whether or not the cost of the treatment was unconscionable.

In any event, it is unnecessary to delve any deeper into the constitutionality of the Board's interpretation of KRS 312.200, or the effect it might have upon other agencies of the Commonwealth, because it is contrary to our interpretation.

We pause to note what the peer review process is *not*. The "peer review" process is not a mechanism for adjudicating medical fee disputes because the Board has no statutory authority to adjudicate medical fee disputes. Moreover, nothing in KRS 312.200 or anywhere else prohibits a patient, insurer, chiropractor, or other party from instituting a civil suit, workers' compensation claim, or other legal action related to the subject of the peer review inquiry before, during, or after the peer review process.

The KRS 312.200 peer review process is also not a part of or a preliminary step in the Board's professional disciplinary process.[10] That much is evident because: 1) per KRS 312.200(2), the process is initiated by an "inquiry" and the payment of a fee from a patient, insurer, or the chiropractor whose service or fee is at issue, as opposed to action from the Board or a grievance or complaint (which do not require the payment of any fee); 2) there is no right to an appeal from a peer review; and, 3) nothing indicates that the results of any KRS 312.200 peer review, favorable or otherwise, could operate to constrain the discretion of the Board to thereafter pursue any kind of disciplinary action against the chiropractor whose services and fees were reviewed. *See* KRS 312.150(3).[11]

tion to determine whether a witness is qualified to express an opinion in a matter which requires expert knowledge, skill, experience, training, or education. Likewise, the rule requires the trial court to determine if such expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. The Cabinet's interpretation of KRS 600.020(47) would transgress established procedure relating to the qualification and admission of expert testimony, and would usurp the power of the· judiciary to control the rules of evidence. In the absence of any indication that the General Assembly intended such a result, we will not interpret a statute in a manner which would render it unconstitutional.

*R.C. v. Commonwealth,* 101 S.W.3d at 901.

10. KRS 312.200(2) does provide that "The peer review committee shall examine each inquiry submitted to it and shall report its findings to the board[.]" There appear to be at least two reasons for this. First, chiropractic peer reviewers are not exempt from the chiropractic code of ethical conduct and stan-

dards of practice enumerated in 201 KAR 21:015. Section 1(7) of that regulation requires all chiropractors licensed by the Board to "report to the board any reasonably suspected violation of KRS Chapter 312 or 201 KAR Chapter 21 by another licensee or applicant within thirty (30) days." And, rendering unnecessary treatment and charging an unconscionable fee—two subjects of a KRS 312.200 peer review—are respectively violations of KRS 312.150(2)(b) and (c). The second reason appears to be an educational one. As illustrated by 201 KAR 21:075 Section 2, the peer review committee prepares and submits an annual summary of its findings to the Board, which the Board makes available to interested persons upon request and upon payment of the cost of reproduction.

11. KRS 312.150(3) provides:

Upon receipt and due consideration of any charges, the board upon an affirmative vote shall determine whether the nature and quality of the charges are such that further investigation or initiation of disciplinary proceedings against the charged licensee is

Moreover, KRS 312.200(2) is the only indication of when a "peer review" under the definition of KRS 312.015(4) *ever* occurs—whether it is a "peer review" conducted by a peer review committee appointed by the Board pursuant to KRS 312.200(1), or by other persons licensed and trained by the Board pursuant to KRS 312.200(3). In particular, KRS 312.200(2) provides that "peer review shall occur upon submission ... in accordance with the procedures and fees approved by the board."

■ In light of the above, we are left to conclude that a "peer review" within the meaning of KRS 312.015(4) merely refers to an optional and nonbinding evaluation process that the Board provides as a service in exchange for a fee. In turn, the Board's procedures require that its nonbinding evaluation process only be performed by a "peer review committee" composed of chiropractors appointed by the Board per KRS 312.200(1), or, alternatively, by an individual chiropractor who has received additional training and has been licensed by the Board per KRS 312.200(3).[12] We are unwilling to read anything more into what a "peer review" is, and we certainly do not understand it to also include or to have any effect upon some other kind of review conducted outside of this process. Thus, we interpret KRS 312.015(4) and KRS 312.200, taken collectively, to simply mean that any matter *not* submitted to the Board cannot be a

"peer review" under the limited purview of those statutes and cannot, therefore, be subject to any action or censure from the Board. This interpretation coincides with the plain language of KRS 312.200(2). Moreover, this interpretation avoids the necessity of otherwise declaring KRS 312.200(3) unconstitutional.

■ As our holding would imply, we affirm the circuit court's decisions dismissing each of the Board's suits. Neither of the aforementioned doctors—Drs. Charles Barlow or Michael Best—purported to conduct Chapter 312 peer reviews of any matter, much less any matter submitted to the Board for evaluation, when they rendered their opinions to Geico. Consequently, the Board had no interest in or authority over their activities.

As an aside, the Board also appears to be focusing upon another issue in this dispute. Drs. Barlow and Best admittedly know little to nothing about chiropractic treatment; they both specialize in altogether different schools of medicine; and, the Board spends much of its brief arguing that it would be improper to allow such physicians to express any opinion, in any context, regarding the necessity of chiropractic care or the reasonableness of its cost. The question presented in this appeal is not, however, whether it is legally acceptable or particularly wise for an insurer to decide that chiropractic treatment is unreasonable or unnecessary based sole-

---

indicated. If disciplinary proceedings are not warranted, the charges shall be dismissed with or without prejudice. If the board determines that disciplinary proceedings are appropriate, the case may be resolved informally by agreed order or set for hearing to be conducted in accordance with KRS Chapter 13B.

12. Nothing in KRS 312.200 requires a matter submitted to the Board to be referred to a

peer review committee, as opposed to an individual licensed and trained per KRS 312.200(3). Furthermore, nothing in KRS 312.200(1) requires any member of the peer review committee to receive the additional training and licensure described in KRS 312.200(3). By its own terms KRS 312.200(3) only applies to *"Other* persons performing peer review of chiropractic claims[.]" (Emphasis added.)

ly upon the word of a doctor who does not specialize in chiropractic medicine.[13] The question presented is whether, outside of its specific peer review process, the Board has the authority to prohibit any doctor it has not licensed and trained per KRS 312.200(3) from evaluating whether or not a chiropractor properly utilized services and rendered or ordered appropriate treatment or services and whether or not the cost of the treatment was unconsciona-ble. And, we have answered that question in the negative.

For these reasons, we affirm.

ALL CONCUR.

---

13. *But see Morgan v. Hill,* 663 S.W.2d 232, 234 (Ky.App.1984) ("Certainly, a medical doctor can testify as to the *cause* of any injury, just as a chiropractor may so testify. A physician may not testify to the chiropractor's standard of care, however, because he does not have the appropriate training and experience to determine what constitutes chiropractic malpractice."); *see also* KRS 304.17A–545(2)(a) (requiring medical director for managed care plan to ensure "any utilization management decision to deny, reduce, or terminate a health care ... service because that service is not medically necessary shall be made by a physician, except in the case of a health care service rendered by a chiropractor or optometrist, that decision shall be made respectively by a chiropractor or optometrist duly licensed in Kentucky"); KRS 304.17A–607(1)(b)(1) (requiring insurer or private review agent, in context of managed care plans, to do the same); 803 KAR 25:190 Section 6 (requiring utilization review personnel to be qualified through training and experience to issue decisions on medical necessity and appropriateness).