Edward W. WELDON, III, Appellant,

v.

Holly WELDON (now Gray), Appellee.

No. 96–CA–0974–MR.

Court of Appeals of Kentucky.

Oct. 10, 1997.

Rehearing Denied Dec. 12, 1997.

Joe B. Campbell, Lexington, for Appellant.

David A. Lanphear, Bowling Green, for Appellee.

Before BUCKINGHAM, DYCHE and GUIDUGLI, JJ.

## OPINION

BUCKINGHAM, Judge.

Edward W. Weldon III(Ed) appeals from a judgment of the Warren Circuit Court awarding permanent maintenance to his ex-wife, Holly G. Weldon (now Gray) (Holly).[1] For the reasons set forth hereinafter, we affirm in part, reverse in part, and remand.

Holly and Ed were married on December 18, 1971, and were separated on November 3, 1993. Two children were born of the marriage, one of which was a minor at the time of the trial. Ed filed for divorce on January 21, 1994, and the trial was held before a domestic relations commissioner (DRC) on three separate days from December 9, 1994, to July 27, 1995. The DRC's report was entered on October 13, 1995, and a supple-mental report was entered on November 2, 1995. The trial court entered its order acting on the DRC's report on February 6, 1996. It is from that order that Ed appeals.

At the time of the divorce, Ed earned approximately $81,000 a year at his job at Fruit of the Loom in Bowling Green. Holly earned approximately $28,000 a year at her job at the Warren County Child Support Office. During their marriage, the parties consumed most of their earnings in maintaining a comfortable lifestyle and thus had accrued only a modest marital estate consisting mainly of their automobiles, pension plans, and the marital residence. The family home was valued at $136,000, and the parties had approximately $53,000 in equity in the home at the time of the divorce. The trial court divided the marital property equally between the parties, with Ed retaining possession of the marital home and most other marital assets and Holly receiving a cash settlement for her half of the value of such assets. The marital portion of each party's pension benefits was to be divided equally upon distribution.

The trial court awarded Holly $706.70 per month in child support and $750 per month in maintenance until the child support obligation ceased, at which time maintenance would be increased to $1,200 per month. The trial court also ruled that the maintenance shall continue until Holly dies, remarries, or enters into a cohabitation relationship. The trial court required Ed to secure his child support and maintenance obligations with a life insurance policy, and it imposed child support and maintenance obligations retroactively to the date Holly had first requested temporary child support and maintenance by oral motion.

Ed's first argument is that Holly did not meet the statutory requirements for an award of maintenance and that the trial court abused its discretion in awarding maintenance to her. KRS 403.200(1) states that the trial court may award maintenance upon a finding that the spouse seeking maintenance "(a) [l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (b) [i]s

---

1. Holly has not remarried but has returned to her maiden name.

unable to support himself through appropriate employment...." Ed argues that because Holly has nonmarital property of approximately $15,000 in value (mainly home furnishings) and a cash payment of approximately $40,000 from him for her half of the marital estate, including the marital equity in the home which Ed retained, she has sufficient property to provide for her reasonable needs. He further argues that since Holly holds a Master's Degree in Public Service from Western Kentucky University and has a $28,000 per year job, she is clearly able to support herself through appropriate employment.

■ In *Casper v. Casper*, Ky., 510 S.W.2d 253 (1974), the court held that the trial court is to determine whether the spouse seeking maintenance lacks sufficient property to meet her reasonable needs and is unable to support herself through appropriate employment *according to the standard of living established during the marriage. Id.* at 255. (Emphasis added.) Although Ed and Holly were, as Ed stated, a "working couple," they nonetheless enjoyed a very comfortable lifestyle with their substantial joint income, their marital residence valued at $136,000, and a country club membership.

■ In reference to the provisions of KRS 403.200, the Kentucky Supreme Court stated in *Perrine v. Christine*, Ky., 833 S.W.2d 825 (1992), as follows:

> Under this statute, the trial court has dual responsibilities: one, to make relevant findings of fact; and two, to exercise its discretion in making a determination on maintenance in light of those facts. In order to reverse the trial court's decision, a reviewing court must find either that the findings of fact are clearly erroneous or that the trial court has abused its discretion.

*Id.* at 826. Considering the nonmarital and marital property assigned to Holly, her annual income, and the standard of living established by the parties during their marriage, we find no abuse of discretion by the trial court in awarding maintenance to Holly.

Ed's next argument is that the trial court erred in awarding maintenance to Holly until she dies, remarries, or cohabits with an unrelated member of the opposite sex.[2] KRS 403.200(2) states:

> (2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:
>
> (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> (c) The standard of living established during the marriage;
>
> (d) The duration of the marriage;
>
> (e) The age, and the physical and emotional condition of the spouse seeking maintenance; and
>
> (f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

Holly was 46 years old at the time of the trial, and Ed was 45. Once the younger child graduates from high school in 1998, Ed's maintenance obligation will be $1,200 per month, or $14,400 per year. Under the terms of the judgment, Ed must pay this amount not only for the almost 20 years until Holly reaches the standard retirement age of 65, but he must pay it until she dies, unless she first remarries or cohabits with a nonrelated member of the opposite sex. Assuming that Holly does not die, remarry, or cohabit, the total of Ed's maintenance payments from the effective date of the maintenance award until Holly reaches age 65 will be approximately one-quarter of a million dollars.

■ We are mindful that the amount and duration of maintenance is within the sound discretion of the trial court. *Russell v.*

2. Ed does not contest the amount of the maintenance but only its duration.

*Russell,* Ky.App., 878 S.W.2d 24, 26 (1994). Furthermore, we are mindful that in matters of such discretion, "unless *absolute abuse* is shown, the appellate court must maintain confidence in the trial court and not disturb the findings of the trial judge." *Clark v. Clark,* Ky.App., 782 S.W.2d 56, 60 (1990). (Emphasis added.) *See also Platt v. Platt,* Ky.App., 728 S.W.2d 542 (1987), and *Moss v. Moss,* Ky.App., 639 S.W.2d 370 (1982). Nevertheless, we believe that by approving the DRC report, the trial judge absolutely abused his discretion by awarding maintenance to Holly past her retirement age of 65. Assuming that Holly reaches age 65 without remarrying or cohabiting, then she will have received maintenance in a substantial amount for a 20–year period. Furthermore, the parties' income levels will be more equal since she will be entitled to half of Ed's pension, as he will be entitled to half of hers.

■ Ed's next argument is that the trial court erred in awarding child support and maintenance retroactively to the date Holly made an oral motion for temporary child support and maintenance. He notes that the DRC had declined to recommend retroactive child support and maintenance in his report and that Holly had only requested child support and maintenance retroactive to the date of her written motion for temporary child support and maintenance. Although he concedes that the trial court has the right to reject or modify the DRC's findings, he urges this Court to accept the DRC's findings and recommendations since to do 'otherwise would be "patently unfair and unjust." However, Ed cites no authority to support his arguments in this regard.

Civil Rule (CR) 7.02 permits oral motions to be made during hearings, and Holly contends that there was no objection to her oral motion for temporary child support and maintenance, which Ed does not deny. Further, Holly waited approximately a year after she and Ed separated before making an oral motion for temporary child support and maintenance in November 1994 and renewing her request in writing in January 1995. The trial court noted that the DRC reserved ruling on this issue at the hearing due to the nearness of the trial date and stated that further orders would relate back to the November 1994 date. Ed fails to cite any authority indicating that the trial court erred or abused its discretion in imposing child support and maintenance retroactive to the date the motion was made. We thus find no error.

Ed's final argument is that the trial court erred in requiring him to maintain life insurance to secure his maintenance obligation. He argues that the trial court erred in finding that he agreed to maintain life insurance benefits for this purpose, as the DRC had stated in his supplemental report that Ed never agreed to provide life insurance for this purpose. Ed further argues that the trial court did not have authority to order him to maintain life insurance to secure his maintenance obligation because KRS 403.250(2) requires that maintenance cease at the death of either party. KRS 403.250(2) provides that "[u]nless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance." The trial court clearly would have the authority to extend maintenance beyond the obligor's death by explicitly stating this provision in the decree.

■ The DRC's report, which was incorporated into the trial court's order, states that maintenance shall continue until Holly dies, remarries, or cohabits with a member of the opposite sex. Because the decree does not explicitly state that the maintenance obligation continues beyond Ed's death, it will terminate at his death pursuant to KRS 403.250(2). *Clark v. Clark,* Ky.App., 601 S.W.2d 614, 615 (1980).

The trial court found that Ed agreed to provide life insurance policies so long as he owes a maintenance obligation to Holly. A review of the videotape record, however, reveals that in responding to a question of the DRC, Ed only agreed that an arrangement to secure the child support and maintenance obligations with life insurance was reasonable. There is a difference between agreeing to provide life insurance and agreeing with the court that an order directing him to provide life insurance would be reasonable.

At any rate, the trial court has not made clear its finding on whether the maintenance obligation will terminate upon Ed's death. As the judgment is written in its present form, the obligation will terminate upon Ed's death pursuant to the statute. However, the life insurance provision in the judgment seems to indicate that the trial court intended to the contrary. Due to this ambiguity, the trial court should determine on remand whether the maintenance obligation will terminate upon Ed's death and, if not, expressly so state as required by the statute.

The judgment of the Warren Circuit Court is affirmed in part and is reversed in part and remanded with instructions for the trial court to determine the duration of the maintenance payments, but not to continue past the time when Holly reaches age 65, and to determine whether the obligation ceases upon Ed's death.

All concur.