RENDERED:  AUGUST 14, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000540-MR

DAVID FERRELL BYRD                                   APPELLANT

APPEAL FROM METCALFE CIRCUIT COURT
v.        HONORABLE MIKE MCKOWN, SPECIAL JUDGE
ACTION NO. 16-CI-00140

JOANNA BYRD
AND KENNETH A. MEREDITH, II                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; GOODWINE AND MCNEILL,
JUDGES.

CLAYTON, CHIEF JUDGE:  David Ferrell Byrd ("David") appeals from the

Metcalfe Circuit Court's findings of fact, conclusions of law, and judgment,

arguing that the trial court made certain mistakes as to its award of maintenance, its

property division, and its award of attorney's fees.

Upon review of the record and applicable law, we affirm.

## BACKGROUND

David and Joanna Byrd ("Joanna") were married in August of 1996, and Joanna filed a petition for dissolution on October 4, 2016. At the time of the filing of the petition for dissolution, Joanna was fifty years of age and listed her occupation as homemaker, while David was fifty-nine years of age and employed as a truck driver for Walmart. The trial court entered an interlocutory decree of dissolution on February 18, 2019, which reserved all other issues including determinations regarding maintenance and the division of marital property. After a two-day hearing, the trial court entered findings of fact, conclusions of law, and judgment on March 4, 2019 (the "Judgment") addressing multiple issues, some of which are described below. David filed a motion to alter, amend, or vacate certain portions of the Judgment, which portions that are relevant to this appeal were denied by the trial court. This appeal followed.

### a. Maintenance

Pursuant to Joanna's request for a maintenance award, the trial court stated in the Judgment that it had considered all of the relevant factors contained in Kentucky Revised Statute (KRS) 403.200 pertaining to such request. Further, the trial court made numerous findings, including that Joanna lacked sufficient property, together with marital property apportioned to her in the Judgment, to

provide for her reasonable needs; that Joanna was unable to support herself through reasonable employment based upon the standard of living maintained by the parties during the marriage; and that the trial court had considered the financial resources of Joanna as well as the marital property apportioned to her and her ability to meet her needs independently.

Specifically, the trial court found that Joanna was at that time not gainfully employed, was fifty-two years of age, and had various health problems, including heart problems, high blood pressure, vertigo, tremors, a racing heart, and anxiety. Although the trial court imputed a monthly minimum wage income to Joanna of $1,257.00, the trial court found Joanna's reasonable living expenses to be approximately $2,406.00 per month after subtracting the expenses the trial court found to be excessive. Alternatively, the trial court noted that David had earned approximately $83,000.00 in 2018, along with having $400.00 per month in rental income. Additionally, the trial court stated that it had considered the twenty-three-year duration of the marriage, the standard of living during the marriage, as well as the "Craig-Ross" model for calculating maintenance. Based on all its findings, the trial court awarded Joanna maintenance in the amount of $1,200.00 per month for a period of eleven and a half years - at which time Joanna would be approximately 64 years of age - or until Joanna died, remarried, or entered into a cohabitation relationship.

### b.  <u>Marital Property Division</u>

Regarding the marital home, the trial court found that the parties had acquired two tracts of real estate during the marriage located at 1535 Center Three Springs Road (the "1535 Property") totaling approximately seventy acres, and that the equity in such property was marital and should be divided equally between the parties.  Under the Judgment, Joanna retained possession of the marital home - with David paying seventy percent of the mortgage and Joanna paying thirty percent - until David either purchased Joanna's interest in the property or the parties chose to list the property for sale.  The court further found that the fair market value of such property was $200,000.00 based on the value assigned by the Property Valuation Administration ("PVA").

The trial court further found that David was vested in a 401k plan through Walmart (the "401k") that was entirely marital in nature.  The court instructed that Joanna's counsel obtain a qualified domestic relations order acceptable to the trustee of the 401k to present to the court for an equal division of the value of the 401k as of October 4, 2018, a date that was two years after the filing of the petition for dissolution and not the date of the divorce decree.

Finally, the trial court found that David had sold thirteen hogs that had been acquired during the marriage and which the court found to be marital property.  The trial court assigned a value of $500.00 per hog, for a total value of

$6,500.00, and ordered David to pay Joanna half of that amount, or $3,250.00. Overall, including her percentage of the marital interest in the marital home, Joanna received approximately $55,318.12 in cash under the Judgment for her half of the value of the parties' marital assets.

### c. **Attorney's Fees**

The trial court found that Joanna owed her attorney $20,075.75 in unpaid attorney's fees and that David owed his attorney $10,122.50 in unpaid attorney's fees. The trial court further found that, given the financial resources of the parties and considering the relevant factors of KRS 403.220, David should pay $6,138.14 of Joanna's attorney's fees.

Other facts will be discussed as they relate to particular arguments raised in this appeal.

## ISSUES

On appeal, David argues that the trial court erred: 1) in awarding maintenance to Joanna; 2) in its division of certain marital property, including its determination of the valuation date of the 401k, its valuation of the 1535 Property, and its decision requiring David to pay half of the value of the hogs; and 3) in requiring David to pay a portion of Joanna's attorney's fees.

# ANALYSIS

As a preliminary matter, David's appellate brief deviates significantly from the format mandated by Kentucky Rule of Civil Procedure (CR) 76.12. First, David's brief does not comply with CR 76.12(4)(c)(iv), which requires:

> [a] "STATEMENT OF THE CASE" consisting of a chronological summary of the facts and procedural events necessary to an understanding of the issues presented by the appeal, *with ample references to the specific pages of the record . . . supporting each of the statements narrated in the summary*.

(Emphasis added.) David's "Statement of the Case" does not contain a single "reference[] to the specific pages of the record . . . supporting each of the statements narrated in the summary." Moreover, parts of David's arguments appear to be contained in his Statement of the Case.

Second, David has also failed to comply with CR 76.12(4)(c)(v), a failure that is particularly problematic. CR 76.12(4)(c)(v) requires that a brief contain:

> An "ARGUMENT" . . . which shall contain at the beginning of the argument a statement with reference to the record *showing whether the issue was properly preserved for review and, if so, in what manner*.

(Emphasis added.) David's brief has no statement of preservation of the issues he raises on appeal. CR 76.12(4)(c)(v). "It goes without saying that errors to be considered for appellate review must be precisely preserved and identified in the

lower court." *Skaggs v. Assad, By and Through Assad*, 712 S.W.2d 947, 950 (Ky. 1986) (citations omitted). Further, "[i]t is not the function or responsibility of this court to scour the record on appeal to ensure that an issue has been preserved." *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019) (citation omitted).

> An appellant's compliance with CR 76.12:
>
> > permits a meaningful and efficient review by directing the reviewing court to the most important aspects of the appeal: what facts are important and where they can be found in the record; what legal reasoning supports the argument and where it can be found in jurisprudence; and where in the record the preceding court had an opportunity to correct its own error before the reviewing court considers the error itself.

*Hallis v. Hallis*, 328 S.W.3d 694, 696-97 (Ky. App. 2010).

Our options when an appellate advocate fails to abide by the rules are: "(1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions . . . ; or (3) to review the issues raised in the brief for manifest injustice only[.] *Id.* at 696 (citations omitted). In this case, the shortcomings in David's brief do not warrant striking his brief or reviewing the appeal solely for manifest injustice. Although we have elected not to impose the more severe options permitted under *Hallis* and CR 76.12, we advise counsel our decision may not be so lenient upon the occurrence of subsequent violations of this Court's procedural rules.

### a. Maintenance

David first argues that the trial court erred in its award of maintenance to Joanna. The Kentucky Supreme Court has stated that "the award of maintenance comes within the sound discretion of the trial court[.]" *Powell v. Powell*, 107 S.W.3d 222, 224 (Ky. 2003) (citations omitted). Such discretion extends to the amount and duration of maintenance as well. *Weldon v. Weldon*, 957 S.W.2d 283, 285 (Ky. App. 1997).

To reverse the trial court, "a reviewing court must find either that the findings of fact are clearly erroneous or that the trial court has abused its discretion." *Perrine v. Christine*, 833 S.W.2d 825, 826 (Ky. 1992). A trial court's finding of fact "is not clearly erroneous if it is supported by substantial evidence." *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky. App. 2003) (citations omitted). Substantial evidence "is evidence, when taken alone or in light of all the evidence, which has sufficient probative value to induce conviction in the mind of a reasonable person." *Id*. (citations omitted). An abuse of discretion concerns "whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

A court's award of maintenance is governed by KRS 403.200, which states, in part, that:

(1) . . . the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

   (a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

   (b) Is unable to support himself through appropriate employment[.]

After the foregoing initial determinations have been made, various factors are to be considered by the trial court in setting the amount and duration of such maintenance, including: the financial resources of the party seeking maintenance and his or her ability to meet his or her needs independently; the time necessary to become sufficiently educated or trained to find appropriate employment; the standard of living established during the marriage; the duration of the marriage; the age and the physical and emotional condition of the spouse seeking maintenance; and the ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance. KRS 403.200(2)(a)-(f).

As to the first requirement under KRS 403.200(1)(a) regarding whether Joanna had sufficient property to provide for her reasonable needs, David argues on appeal that Joanna received half of the marital property and could therefore provide for her reasonable needs without maintenance payments from David. As previously discussed, Joanna received half of the equity in the 1535

Property, totaling $37,841.29. Moreover, Joanna received half of the equity in the parties' rental property, totaling $12,003.55. Joanna was further awarded, among other amounts, half of a tax refund, an unclaimed property amount, and half the value of the hogs, which totaled approximately $5,400.00. Joanna also received approximately $55,718.82 from her half of the 401k.

While David argues that the foregoing amount is sufficient to provide for Joanna's reasonable needs, David overlooks the fact that Joanna would have to rent or purchase a residence, as the Judgment awarded to David the 1535 Property. Moreover, although Joanna was awarded half of the 401k, she was only fifty-two years of age at the time of the trial court's order, and therefore would presumably incur early withdrawal penalties. Finally, after subtracting out the expenses found by the trial court to be unreasonable, the trial court found Joanna's reasonable monthly expenses to be approximately $2,406.00 per month. Together with Joanna's imputed income of $1,257.00 per month, David's maintenance payments of $1,200.00 per month would put Joanna's monthly income at $2,457.00, or just enough to meet her monthly expenses. Therefore, we do not believe that the trial court abused its discretion in determining that Joanna did not possess sufficient property overall to provide for her reasonable needs without the aid of David's maintenance payments.

As to the second requirement under KRS 403.200(1)(b), David argues that there was no proof in the record that Joanna was not able to return to gainful employment or that her medical condition precluded her from returning to gainful employment. However, the evidence of record indicated that Joanna was not employed and had not been employed for the five years prior to the filing of the petition for dissolution. Further, Joanna listed her medical conditions as heart failure, high blood pressure, Meniere's disease, body tremors, and anxiety, and she introduced at trial a list of six daily prescription medications that she took for such medical conditions. Additionally, Joanna testified that her medical conditions precluded her from returning to gainful employment. The Kentucky Supreme Court has stated that "'in situations where the marriage was long term, the dependent spouse is near retirement age, the discrepancy in incomes is great, or the prospects for self-sufficiency appears dismal,' our courts have . . . awarded maintenance for a longer period or in greater amounts." *Powell*, 107 S.W.3d at 224 (quoting *Clark v. Clark*, 782 S.W.2d 56, 61 (Ky. App. 1990)). Based on the foregoing, therefore, we cannot say that the trial court clearly erred in its determination that Joanna was unable to support herself through appropriate employment or that the trial court abused its discretion in awarding Joanna maintenance.

-11-

With regard to the amount of maintenance ordered by the trial court, David argues that he is unable to pay such amount while meeting his own needs. The trial court's finding that David had sufficient financial means to pay maintenance to Joanna, however, was based on evidence that he had earned in excess of $83,000.00 in 2018 and had rental income of $400.00 per month. Such evidence included W-2 wage statements as well as tax returns. Further, the trial court clearly considered David's ability to meet his own reasonable needs, going through each of David's claimed monthly expenses and finding a number of them to be unreasonable. The Judgment reflected that the trial court considered all of the factors contained in KRS 403.200(2) to determine the appropriate amount of maintenance, including the fact that the parties had a twenty-three-year marriage, Joanna's age and her ability to gain full-time employment through appropriate training or education, and the standard of living maintained during the parties' marriage.

As to the duration of the trial court's award of maintenance, David argues that he had been planning to retire because of his age, health, and the stress of his employment. David argues that the court's award of maintenance to Joanna would require David to continue working until he was almost seventy-three years of age, and that he should not have to work eight years past the normal retirement age of sixty-five.

In support of his argument, David cites *Weldon*, *supra*. We do not believe, however, that the facts of *Weldon* are applicable to the case before us. The facts in *Weldon* concerned a party *receiving* maintenance past the age of sixty-five, not a party *paying* maintenance past the age of sixty-five. 957 S.W.2d at 284-85. Additionally, in *Weldon*, the maintenance award ordered by the trial court was open-ended and ceased only upon the death or remarriage of the party receiving the maintenance payments. *Id*. at 284. In this case, given the large and continuing discrepancy between the parties' income and the length of their marriage, as well as the fact that Joanna would be nearing the age of sixty-five when the maintenance payments would cease, the duration of the trial court's maintenance award is neither clearly erroneous nor an abuse of discretion. Should David later encounter a changed circumstance that would make the award unconscionable, relief is available to him through KRS 403.250.

David further argues that the trial court did not account for David's financial support of Joanna since the beginning of the divorce proceedings in 2016, as well as throughout their separation. David cites us to no authority stating that one spouse's support of the other spouse through temporary maintenance and mortgage payments throughout divorce proceedings requires a reduction in the duration or amount of the payment of permanent maintenance to such spouse.

-13-

Finally, David argues that the trial court erred when it considered the Craig-Ross formula in calculating the amount of maintenance. We find no merit to this argument, as David cites us to no relevant or applicable case law that prohibits a trial court from considering various formulas when attempting to calculate a maintenance award. Rather, the cases cited by David either deal with the calculation of child support – not maintenance – or further bolster the "undisputable" idea that "trial courts have wide discretion in determining the amount of maintenance and that no particular formula has ever been held as the method for establishing maintenance." *Age v. Age*, 340 S.W.3d 88, 95 (Ky. App. 2011). The fact that the trial court, in exercising its wide discretion, looked to certain appropriate mechanisms for the determination of a maintenance amount was not an abuse of its discretion.

### b. Marital Property Valuation and Division

David next argues that the trial court erred when it equally divided the 401k and used a valuation date that was two years after the filing of the petition for dissolution, that the trial court incorrectly valued the 1535 Property, and that the trial court erred in its decision regarding the division of the hogs. Under KRS 403.190(2), "marital property" is defined as "all property acquired by either spouse subsequent to the marriage[,]" subject to certain exceptions. After the determination of which property is marital, KRS 403.190(1) directs a trial court to

-14-

divide such marital property in "just proportions[.]"  The statute does not require an equal division of property.  *Lawson v. Lawson*, 228 S.W.3d 18, 21 (Ky. App. 2007).  However, the statute does set out several relevant factors to consider in dividing marital property, including:

> (a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;
>
> (b) Value of the property set apart to each spouse;
>
> (c) Duration of the marriage; and
>
> (d) Economic circumstances of each spouse when the division of property is to become effective[.]

Again, a trial court has wide discretion in dividing marital property pursuant to KRS 403.190, and in the absence of an abuse of discretion, such determination should not be set aside.  *Wilder v. Wilder*, 294 S.W.3d 449, 452 (Ky. App. 2009).

David argues that there should not be an equal division of the 401k, as he argues that Joanna chose not to work during the parties' marriage.  In the alternative, David argues that the trial court used the wrong valuation date for the 401k.  However, we agree with Joanna that, because these arguments were not presented to the trial court in David's motion to alter, amend, or vacate, we cannot address them on appeal.  Indeed, "a party may not raise an issue for the first time on appeal."  *Sunrise Children's Services, Inc. v. Kentucky Unemployment Insurance Commission*, 515 S.W.3d 186, 192 (Ky. App. 2016) (citation omitted).

-15-

David next argues that the trial court erred in relying on the PVA value for the 1535 Property. However, David presented no expert testimony at the hearing regarding the value of the 1535 Property, no appraisal of the 1535 Property, or any other evidence regarding the property's value. As stated in *Turley v. Turley*, 562 S.W.2d 665, 667 (Ky. App. 1978), "[c]ertainly, we cannot say that the value assigned was excessive when the complaining party offered no evidence respecting the principal asset owned by the parties." Therefore, the trial court's conclusion that the home was worth $200,000.00 was not clearly erroneous.

Finally, David makes a cursory argument regarding the equalization payment that the trial court required him to make to Joanna regarding the sale of the hogs. His argument is essentially that his testimony concerning the matter was more credible than was Joanna's testimony. The trial court, however, was in the best position to assess the credibility of the witnesses "because judging the credibility of witnesses . . . is a task[] within the exclusive province of the trial court." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted). We cannot say that the trial court's conclusion was clearly erroneous or that the trial court abused its discretion.

### c. **Attorney's Fees**

David argues that the trial court erred in requiring David to pay $6,138.14 of Joanna's $20,075.75 in outstanding attorney's fees. Under Kentucky

law, an award of attorney's fees is reviewed by this Court using an abuse of discretion standard. *Allison v. Allison*, 246 S.W.3d 898, 909 (Ky. App. 2008). The relevant statute, KRS 403.220, states that "[t]he court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees[.]" The Kentucky Supreme Court has explained that:

> [t]he purpose of the fee-shifting statute . . . is simply to ensure the fairness of domestic relations proceedings: to prevent one party to a divorce action from controlling the outcome solely because he or she is in a position of financial superiority, and to equalize the status of the parties to a dissolution proceeding . . . in an effort to eliminate the inequities resulting from the termination of the relationship.

*Rumpel v. Rumpel*, 438 S.W.3d 354, 363 (Ky. 2014) (citations and quotations omitted).

In this case, the court stated in the Judgment that it had considered the disparity in the financial resources between the parties in its decision as well as the other relevant factors in KRS 403.220. As previously discussed, David had earned $83,000.00 in 2018, along with rental income, while Joanna was unemployed. We do not believe that the trial court abused its discretion in its award of attorney's fees to Joanna.

-17-

## CONCLUSION

For the foregoing reasons, the Judgment of the Metcalfe Circuit Court is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Ronald D. Mather
Hodgenville, Kentucky

BRIEF FOR APPELLEES:

Kenneth A. Meredith, II
Bowling Green, Kentucky