RENDERED: FEBRUARY 18, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0123-MR

GREGORY WAYNE SMITH                                              APPELLANT

v.
APPEAL FROM BARREN CIRCUIT COURT
HONORABLE MICA W. PENCE, JUDGE
ACTION NO. 19-CI-00503

KAYLA MICHELE SMITH                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CETRULO AND McNEILL, JUDGES.

CETRULO, JUDGE: Barren Circuit Court, Family Division ("family court"),
entered amended findings of fact, conclusions of law, and a decree of dissolution
of marriage in the above-styled action. As part of the decree, the family court
awarded, in pertinent part, the former wife monthly spousal maintenance from her
former husband and assigned the entirety of a credit card debt to him. The former

husband now appeals, challenging the amount and duration of the maintenance and the assignment of the credit card debt. Having reviewed the record and being otherwise sufficiently advised, we AFFIRM the Barren Circuit Court.

## I. BACKGROUND

Gregory Wayne Smith ("Gregory") and Kayla Michele Smith ("Kayla") were married in August 1987 and separated in April 2019. At the time of the final hearing, Kayla was 54 years old and enrolled in a General Education Development (GED) Program; her highest level of education was completion of the eighth grade. Kayla suffers from seizures, and has been diagnosed with Multiple Sclerosis, Sjogrens Syndrome, and Bipolar Disorder. As a result, Kayla receives $880 in monthly Social Security Disability benefits. Prior to being medically disabled, Kayla was employed at the Barren County Clerk's Office, but she left that employment due to symptoms of her illnesses. Her only other employment was seasonal work at her brother's barbeque restaurant earning an average of $312 per month.

At the time of the final hearing, Gregory was 56 years old. He is a high school graduate and has been employed by Dart Container for 30 years. Gregory's 2019 tax return was entered into the record, indicating his annual gross income was $53,883.

At the time of the separation, the couple had no minor children; child support and custody were not at issue in the dissolution. The family court's first findings of fact, conclusions of law, and Decree of Dissolution were entered on October 15, 2020 ("October Decree"). In pertinent part, that October Decree determined that the Chase credit card, with a balance of $8,315,[1] was marital property, but it was Gregory's sole responsibility. The October Decree also determined Kayla's monthly expenses were $2,542 and Gregory's monthly disposable income was $2,418. The family court set maintenance at $1,200 per month. The family court directed Kayla to apply for regular Social Security benefits at the earliest date they become available to her, and upon receipt of her first payment, Gregory's monthly maintenance obligation would cease.

After this October Decree, Gregory filed a motion to alter, amend, or vacate the findings of fact and conclusions of law. After a hearing on November 18, 2020, the family court granted the motion in part and denied it in part. In pertinent part, the family court entered amended findings of fact and conclusions of law on December 28, 2020 ("December Decree") finding: (1) the entire balance of the Chase credit card was still deemed entirely Gregory's responsibility, (2) Gregory's monthly disposable income was reassessed and

---

[1] All dollar amounts have been rounded to the nearest whole dollar.

reduced from $2,418 to $1,370,[2] (3) maintenance was reduced from $1,200 to $1,000, and (4) the sunset date on maintenance remained the same, but the court clarified the language to state Kayla "must apply for Social Security retirement benefits at the earliest date she becomes eligible for same, whether said eligibility is for spousal or primary benefits." Herein, Gregory appeals the assignment of the Chase credit card debt and the duration and amount of maintenance awarded to Kayla.

## II. STANDARD OF REVIEW

In reviewing issues in an action for dissolution of marriage, we must defer to the discretion of the trial court. *Muir v. Muir*, 406 S.W.3d 31, 34 (Ky. App. 2013) (citing *Johnson v. Johnson*, 564 S.W.2d 221, 222 (Ky. App. 1978)). We review the court's findings of fact for clear error and its conclusions of law *de novo*. Kentucky Rule of Civil Procedure (CR) 52.01; *see also Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky. App. 2003). Specifically, the award of maintenance will not be disturbed absent an abuse of discretion. *Barbarine v. Barbarine*, 925 S.W.2d 831, 832 (Ky. App. 1996). Similarly, assignment of debts incurred during the marriage will not be disturbed absent an abuse of discretion. *Neidlinger v. Neidlinger*, 52 S.W.3d, 513, 523 (Ky. 2001), *overruled on other*

---

[2] The family court mistakenly used Gregory's expenses total of $2,418, not his disposable monthly income.

*grounds by Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018).  Abuse of discretion occurs when the family court's decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."  *Artrip v. Noe*, 311 S.W.3d 229, 232 (Ky. 2010) (citing *McKinney v. McKinney*, 257 S.W.3d 130, 133 (Ky. App. 2008)).

## III.  ASSIGNMENT OF DEBT

Gregory testified that the Chase credit card balance at the time of separation was approximately $6,000.  The balance at the time of the final hearing was $8,315, but Gregory testified that he did not charge anything during the period of separation that did not relate to Kayla.  In part, Gregory used the card to make payments on a 2017 Dodge Journey, a marital asset awarded to Kayla.

Kayla argues the assignment of the credit card debt was correct due to the economic circumstances of the parties.  Kayla has a variety of health ailments that prevent her from gainful employment.  She argues that Gregory is "healthy enough to work and economically able to make the periodic payments on the Chase debt."  She also contends that "[w]hile the debt may cause a small burden to [Gregory] the debt assignment to [Kayla] would destroy [her] economic viability as a new household emerging from this marriage."

In the October Decree, the family court stated that "[t]here is no dispute regarding the nature of said credit card debt, which is marital."  The court went on to say that "[b]ased upon the evidence, and as detailed in the [c]ourt's

-5-

[f]indings herein; it is clear that the [p]arties have disparate financial circumstances; [and] that [Kayla] is in poor health not conducive to enabling her to find appropriate employment even if she acquires sufficient education or training over time[.]" The court thereafter found the Chase credit card to be Gregory's sole responsibility. The matter was readdressed in the December Decree, but the court again ruled that the debt had been divided equitably given the facts in evidence and relevant Kentucky law, and denied Gregory's motion in respect to reassignment of debt.

"In dividing marital property, including debts, appurtenant to a divorce, the trial court is guided by Kentucky Revised Statute (KRS) 403.190(1), which requires that division be accomplished in 'just proportions.' This does not mean, however, that property must be divided equally." *Lawson v. Lawson*, 228 S.W.3d 18, 21 (Ky. App. 2007) (citations omitted). The statute, KRS 403.190(1), does set out several relevant factors to consider in dividing marital property, including:

> (a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;
>
> (b) Value of the property set apart to each spouse;
>
> (c) Duration of the marriage; and
>
> (d) Economic circumstances of each spouse when the division of property is to become effective[.]

The family court stated specifically in the December Decree that these factors were considered. The court looked at the financial history of the parties throughout their 33-year marriage and considered their future earning abilities. Additionally, the family court discussed the reasonable needs of the parties and the respective economic ability of the parties to assume the indebtedness. Gregory has consistent employment and the ability to pay off the debt; the same cannot be said for Kayla. Kayla cannot work due to her health, but even if her health was not a factor, she would be hindered in her employment search due to a lack of education and work history.

The allocation of debt may be a burden upon Gregory, but he is the only one of the two able to carry this burden; therefore, we find that the family court's assignment of debt was based on substantial evidence and not an abuse of discretion.

## IV. MAINTENANCE

The determination of maintenance involves a two-pronged analysis. First, the family court must decide whether the requesting spouse is entitled to maintenance by examining that spouse's financial needs and resources. *Wattenberger v. Wattenberger*, 577 S.W.3d 786, 787 (Ky. App. 2019). Pursuant to KRS 403.200(1), the family court may award maintenance if it finds that the spouse seeking maintenance (a) "[l]acks sufficient property, including marital

property apportioned to [her], to provide for [her] reasonable needs"; and (b) "[i]s unable to support [her]self through appropriate employment[.]" *McVicker v. McVicker*, 461 S.W.3d 404, 420 (Ky. App. 2015).

If, based on those factors, an award of maintenance is justified, the family court moves on to the second prong of the analysis: deciding the appropriate amount and duration of the award. The court should consider all relevant factors, including:

> (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently . . . ;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> (c) The standard of living established during the marriage;
>
> (d) The duration of the marriage;
>
> (e) The age, and the physical and emotional condition of the spouse seeking maintenance; and
>
> (f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

KRS 403.200(2).

Gregory does not contest that Kayla is entitled to spousal maintenance, but rather he contests the *amount* and *duration* of that maintenance.

Therefore, it is not necessary to analyze the requirements of KRS 403.200(1). We focus our review on KRS 403.200(2). Again, the award of maintenance comes within the sound discretion of the trial court and such discretion extends to the amount and duration of maintenance. *Weldon v. Weldon*, 957 S.W.2d 283, 285 (Ky. App. 1997).

### (a) Maintenance Amount

Gregory argues the family court did not make complete findings according to the factors in KRS 403.200(2) and that the family court did not adequately consider: (a) the parties' standard of living; (b) whether Kayla's award of marital property was sufficient to meet her needs; and (c) Gregory's gross income as opposed to his net income.

Kayla argues the award of maintenance was appropriate, due to her lack of education and her health issues preventing gainful employment. Kayla argues she is not able to support herself or her reasonable needs, let alone at the standard she enjoyed during the marriage.

In the December Decree, the family court made specific findings as to Kayla's lack of education and numerous ailments preventing gainful employment. Kayla was able to work seasonally for her brother, but the court did not factor that into the allocation of marital assets. The court found Gregory did have gainful employment and the ability to work overtime, but the court did not factor the

overtime possibility into the allocation of marital assets. The court assessed an equal division of Gregory's retirement account through Dart Container and the proceeds from the sale of the marital residence. Each spouse was awarded the vehicle he/she regularly drove and the equity therein. The family court made numerous additional findings allocating possible stimulus payments, credit card debt (as previously discussed), a $50 check, and a 1996 insurance settlement.

True, the amended December Decree does not explicitly walk through an overt analysis of the factors listed in KRS 403.200(2), but precedent does not require the family court "to render explicit findings of fact as to each relevant KRS 403.200(2) factor." *Shafizadeh v. Shafizadeh*, 444 S.W.3d 437, 446 (Ky. App. 2012) (citing *McGregor v. McGregor*, 334 S.W.3d 113, 118 (Ky. App. 2011)). The December Decree *does* walk through a standard of living analysis. The findings include a recitation of the disparate financial circumstances, Kayla's lack of education, her lack of sufficient property to provide for her reasonable needs, Gregory's ability to meet his monthly maintenance obligation, and the duration of the 33-year marriage.

Additionally, the family court made numerous references to Kayla's poor health. "[W]here one is unable due to health problems to be self-supporting, the statute is appropriately utilized to prevent the 'drastic change' in the standard of living [after the dissolution]." *Naramore v. Naramore*, 611 S.W.3d 281, 289

-10-

(Ky. App. 2020) (quoting *Leitsch v. Leitsch*, 839 S.W.2d 287, 290 (Ky. App. 1992)). It is clear from the record that Kayla's poor health weighed heavily into the family court's allocations.

Gregory argues that his income was inaccurately calculated, but the December Decree addressed and corrected that issue. The family court stated numerous times on the record at the November 18, 2020 hearing that all financial submissions to the court, including those of increased insurance costs, would be taken into consideration. Gregory points out that *net income* is preferred over *gross income* for a maintenance determination, citing *Powell v. Powell*, 107 S.W.3d 222, 226 (Ky. 2003). True, in *Powell*, our Supreme Court said, "[w]e think that common sense dictates that a court consider the parties' net income when determining whether or not the spouse seeking maintenance will be able to meet his or her needs, as well as the payor spouse's ability to continue meeting his or her own needs." *Id.* But, Kayla aptly brings the argument back to basics: Black's Law Dictionary defines *net income* as "[t]otal income from all sources minus deductions, exemptions, and other tax reductions." *Net income*, BLACK'S LAW DICTIONARY (8th ed. 1990).

The December Decree states, "[Gregory's] monthly gross income is [$4,293]; after taxes are deducted and he pays his monthly expenses, [Gregory] has [$1,370] in monthly disposable income." After a $1000 maintenance payment,

that leaves Gregory only $370 in remainder. Although that is a tight budget, we do not find reversible error in the court's analysis considering all the relevant factors that were discussed to reach that conclusion. It is clear from the record that the family court did base the amount of monthly spousal maintenance on substantial evidence. Additionally, even if the family court did vacillate between gross and net income, we do not find this to be more than harmless error under these facts and, therefore, see no need to disturb the family court's maintenance decision.[3]

### (b) Maintenance Duration

The purpose of spousal maintenance is to enable the receiving spouse to support herself to acquire the skills necessary in the current workforce so that she does not rely upon the maintenance indefinitely. *Powell*, 107 S.W.3d at 224. However, where the marriage was long term, the dependent spouse is near retirement age, there is a large discrepancy in incomes, or the prospects for self-sufficiency appear dismal, our courts have declined to follow that policy and have awarded maintenance for longer periods. *Id.*

In his brief, Gregory argues, citing *Naramore*, that the family court abused its discretion in determining the duration of the maintenance because

---

[3] In *Lambe v. Lambe*, this Court also found the vacillation between gross and net income to be harmless error; because *Lambe* is unpublished, we find it to be persuasive, although not binding. *Lambe v. Lambe*, Nos. 2015-CA-000086-MR, 2015-CA-0011141-MR, and 2015-CA-001305-MR, 2017 WL 5508767, at *6 (Ky. App. Nov. 17, 2017).

"without evidence of when the receiving spouse would be eligible to receive Social Security benefits nor the amount, terminating maintenance on this basis was an abuse of discretion."  611 S.W.3d 281.

True, *Naramore* held that a termination of maintenance when the receiving spouse "is of the age to receive Social Security[,]" with no additional evidence regarding when this would occur or how much the spouse would be eligible to receive, was an arbitrary determination.  *Naramore*, 611 S.W.3d at 289-90.  But, in *Naramore*, the Court's concern was in favor of the receiving spouse and with the lack of evidence as to when she would receive it or how much she would receive.  In contrast to the matter herein, there were numerous unknown variables affecting the *Naramore* receiving spouse.  The paying spouse did not present any detailed evidence concerning his expenses; there was no evidence submitted regarding when the receiving spouse would be able to draw on the 401(k)s and pension plans without penalty and how much she would be entitled to receive each month or year.  Herein, there is considerably more certainty.  Kayla and Gregory submitted evidence as to their expenses and income; the retirement accounts were divided equitably; debts were allotted; the marital property was sold; and all accounting was substantianted by evidence.

Additionally, it is unclear from Gregory's brief what relief he seeks.  It appears that Gregory wants a definitive date for the maintenance termination

because the current decree language "places the burden on [Gregory] to discover when [Kayla] has received her Social Security benefits." But, turning again to the *Naramore* case that Gregory cites, "[w]hen the evidence regarding entitlement to and amount of future benefits is speculative, it is better practice to enter an open-ended award that can be reduced or eliminated pursuant to KRS 403.250." *Id.* at 290 (citation omitted). The family court judge did clarify that the wife was required to apply for social security retirement benefits at the earliest date she became eligible to do so. If there was any error in that regard, it inures only to the benefit of the appellant. Under these facts, we find substantial evidence to support the maintenance duration, and we do not find the family court's decision to be arbitrary.

## V. CONCLUSION

Based on the foregoing, we AFFIRM the Barren Circuit Court.

McNEILL, JUDGE, CONCURS.

CLAYTON, CHIEF JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

David F. Broderick
Bowling Green, Kentucky

BRIEF FOR APPELLEE:

Benjamin D. Rogers
Glasgow, Kentucky