RENDERED: APRIL 29, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1618-MR

TRAVIS YATES                                                                    APPELLANT

v.

APPEAL FROM CARTER CIRCUIT COURT
HONORABLE DAVID D. FLATT, JUDGE
ACTION NO. 20-CI-00137

REBECCA YATES                                                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

CLAYTON, CHIEF JUDGE: Travis Yates ("Travis") appeals from the Carter

Circuit Court's findings of fact, conclusions of law, and decree of dissolution of

marriage (the "Decree") awarding Rebecca Yates ("Rebecca") monthly spousal

maintenance of $400.00 for five (5) years. Travis also appeals the trial court's

distribution of marital property and marital debt. Finding no error, we affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

Travis and Rebecca married in February 2010 and separated in April 2020, with Rebecca filing a petition for dissolution of marriage with the Carter Circuit Court on May 22, 2020. The couple had two minor children and agreed on custody and timesharing.

Rebecca was employed as a social worker approximately one month prior to the hearing in this case, with a salary of $35,000.00 annually. Travis was employed as a boilermaker at the time of the hearing and testified that he was preparing to work a shutdown, which would bring him significantly higher income for several weeks. Income tax returns for 2018 and 2019 showed Travis's earnings at $96,053.00 and $90,000.00, respectively.

The trial court held a hearing on October 2, 2020, and entered the Decree on October 29, 2020. In the Decree, the trial court awarded Rebecca $400.00 per month in maintenance for five (5) years, divided the parties' marital and non-marital property, and assigned the marital debt. Travis filed a motion to alter, amend, or vacate, which the trial court denied. This appeal followed.

We will address further facts as they become relevant to the Opinion.

## ANALYSIS

### a. Division of Marital Property

Because the division of marital and non-marital property affects a court's analysis regarding maintenance, we will first examine Travis's claims regarding the division of the marital property. *See Owens v. Owens*, 672 S.W.2d 67, 69 (Ky. App. 1984). When the division of property is at issue, the trial court's classification of that property as marital or non-marital is a required threshold task. *Sexton v. Sexton*, 125 S.W.3d 258, 264-65 (Ky. 2004). Indeed, Kentucky Revised Statute ("KRS") 403.190(1) instructs the trial court to first classify each item of property as marital or non-marital and then assign each spouse the non-marital property belonging to such spouse. *Snodgrass v. Snodgrass*, 297 S.W.3d 878, 887 (Ky. App. 2009).

All property acquired during the marriage is presumed to be marital property unless shown to fall under one of the exceptions in KRS 403.190(2). *Sexton*, 125 S.W.3d at 266. In dividing marital property, the trial court must consider several factors, including the "[v]alue of the property set apart to each spouse" and the "[e]conomic circumstances of each spouse when the division of property is to become effective . . . [.]" KRS 403.190(1)(b) and (d). Further, KRS 403.190(1) requires a trial court to divide the marital property in "'just proportions;' *it does not require that the division be equal*." *McGowan v.*

*McGowan*, 663 S.W.2d 219, 223 (Ky. App. 1983) (emphasis added) (citing

*Quiggins v. Quiggins*, 637 S.W.2d 666, 669 (Ky. App. 1982)).

An appellate court reviews the trial court's distribution of marital

property under an abuse of discretion standard. *Herron v. Herron*, 573 S.W.2d

342, 344 (Ky. 1978). An abuse of discretion concerns "whether the trial judge's

decision was arbitrary, unreasonable, unfair, or unsupported by sound legal

principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations

omitted).

In this case, Travis appears to be arguing that the trial court erred in

awarding the marital residence to Rebecca because marital funds withdrawn from

an annuity had been used both as the down payment for the marital residence,

improvements to the residence, and the mortgage payments on the marital

residence.

Specifically, the parties testified that they purchased the marital

residence in May 2019 for $166,650.00. The record reflects that the parties

withdrew $41,000.00 from a $63,000.00 annuity at the time of the purchase of the

marital residence. Of the amount withdrawn from the annuity, the couple used

$8,000.00 of the funds as a down payment on the marital residence, and an

additional $10,000.00 was used for the residence. The couple placed $20,000.00

into an account to ensure the timely payment of the mortgage.

At the time of the hearing, the parties had made monthly mortgage payments of $1,063.70 on the house for approximately one year. Neither party testified to any substantial improvements to the house, and the court found that the fair market value of the marital residence was thus $166,650.00. In the Decree, the trial court awarded Rebecca the marital residence and instructed her to assume the mortgage payments in the future.

However, Travis also owned a mobile home that he had purchased before the parties' marriage. The parties lived in the mobile home for the first nine (9) years of their marriage and used marital funds to make the monthly payments of $436.00 during the couple's marriage. The trial court awarded Travis the mobile home in the Decree.

In this case, we do not discern any clear error or abuse of discretion on the part of the trial court. The trial court properly restored the mobile home to Travis, which was his non-marital property. However, the court further noted that the couple had made a payment of $436.00 per month from marital funds towards the debt on the mobile home for the majority of the couple's marriage. Thus, in awarding the marital home to Rebecca, the court was balancing out the marital funds the couple had expended on the payments to the mobile home during the parties' marriage. Additionally, the court was taking into account the "[e]conomic circumstances of each spouse" as required under KRS 403.190(1)(d) and

addressing the vast disparity in income between Travis and Rebecca. We again note that a trial court has "wide discretion" in dividing marital property. *Johnson v. Johnson*, 564 S.W.2d 221, 222 (Ky. App. 1978). Travis has failed to show an abuse of discretion in the court's division of marital property.

### b. Marital Debt

Travis next argues that the trial court erred in assigning him a tax liability of $9,129.00, as the trial court's assignment of such debt was not a proportionate division of the marital debt. Travis also discusses his concerns regarding repayment of the amounts that the parties withdrew from the annuity. We review issues pertaining to the assignment of debts incurred during the marriage under an abuse of discretion standard. *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 523 (Ky. 2001), *overruled on other grounds by Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018).

Unlike marital property, the Kentucky Supreme Court has noted that "[t]here is no statutory authority for assigning debts" in a dissolution action, "[n]or is there a statutory presumption as to whether debts incurred during the marriage are marital or non[-]marital in nature." *Id*. at 522. Further, there is no presumption that debts must be divided equally or in the same proportion as the marital property. *Id*. Instead, debts are generally "assigned on the basis of such factors as receipt of benefits and extent of participation" as well as "the economic

circumstances of the parties bearing on their respective abilities to assume the indebtedness." *Id*. at 523.

Travis fails to cite this Court to any specific evidence concerning the repayment details, if any, of the amounts withdrawn from the annuity. Moreover, the trial court did not specifically require the repayment of such amounts in the Decree. Further, as to the tax liability, one statutory factor is the respective economic ability of the parties to assume the indebtedness. The trial court clearly felt that Travis was in a more stable financial position to assume the debt, and we do not see an abuse of discretion. Therefore, we affirm the trial court's decision regarding the division of debt.

### c. **Maintenance**

Travis also argues that the trial court's maintenance award to Rebecca was too high and that he would be unable to pay the amount of maintenance while meeting his own reasonable needs. *See* KRS 403.200(2)(f). The Kentucky Supreme Court has stated that "the award of maintenance comes within the sound discretion of the trial court[.]" *Powell v. Powell*, 107 S.W.3d 222, 224 (Ky. 2003) (citations omitted). Such discretion extends to the amount and duration of maintenance as well. *Weldon v. Weldon*, 957 S.W.2d 283, 285 (Ky. App. 1997) (citation omitted).

To reverse the trial court, "a reviewing court must find either that the findings of fact are clearly erroneous or that the trial court has abused its discretion." *Perrine v. Christine*, 833 S.W.2d 825, 826 (Ky. 1992). A trial court's finding of fact "is not clearly erroneous if it is supported by substantial evidence." *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky. App. 2003) (citations omitted). Substantial evidence "is evidence, when taken alone or in light of all the evidence, which has sufficient probative value to induce conviction in the mind of a reasonable person." *Id.* (citations omitted).

A court's award of maintenance is governed by KRS 403.200, which states, in part, that:

> (1) . . . the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
>
> > (a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and
> >
> > (b) Is unable to support himself through appropriate employment . . . [.]

If based on those factors, an award of maintenance is justified. Various factors are to be considered by the trial court in setting the amount and duration of such maintenance, including the financial resources of the party seeking maintenance and his or her ability to meet his or her needs independently; the time necessary to become sufficiently educated or trained to find appropriate employment; the

-8-

standard of living established during the marriage; the duration of the marriage; the age and the physical and emotional condition of the spouse seeking maintenance; and the ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance. KRS 403.200(2)(a)-(f).

First, Travis contends that the trial court considered his gross income rather than his net income in determining maintenance, contrary to *Powell*. 107 S.W.3d at 226. In *Powell*, the Court stated, "common sense dictates that a court consider the parties' net income when determining whether or not the spouse seeking maintenance will be able to meet his or her needs, as well as the payor spouse's ability to continue meeting his or her own needs." *Id.*

We agree that, in looking at the parties' financial resources pursuant to KRS 403.200(2), the court should consider the parties' net income, not gross income. *Id.* Moreover, it is true that, in this case, the Decree did not refer to Travis's net income and stated his gross income of $6,300.67 per month.

Nevertheless, even if the court erred in failing to consider Travis's after-tax income in awarding maintenance, the error was harmless. *See* Kentucky Rule of Civil Procedure (CR) 61.01. The Decree reflected that the trial court considered all the factors contained in KRS 403.200(2) to determine the appropriate amount and duration of maintenance. The trial court discussed the fact

that Travis was in a much better financial position than Rebecca, having earned $96,053.00 in 2018 and $90,000.00 in 2019. Moreover, the court noted that Travis had testified that he was expecting significantly higher income in the near future.

Meanwhile, the trial court found that Rebecca's financial resources outside of Travis's child support payments were $2,736.00 in monthly income, while she had $3,877.70 in reasonable monthly expenses. *See* KRS 403.200(2)(a). Moreover, while Rebecca had been awarded an interest in Travis's pension and annuity, early withdrawal penalties could be assessed if Rebecca withdrew money from the accounts prior to retirement age. Therefore, we agree with the trial court that the retirement accounts should not be considered a readily available source of income from which Rebecca could meet her present-day, preretirement-age needs. The remainder of Rebecca's financial resources consisted of a $3,000.00 equalization payment and half of a vacation bonus received by Travis, or $2,100.00. Thus, the court was balancing Rebecca's financial resources and her ability to meet her needs independently.

Further, as found by the trial court, the parties enjoyed a comfortable standard of living during the marriage and had been married for approximately ten years. *See* KRS 403.200(2)(c) and (d). The trial court also considered Rebecca's age and her ability to gain full-time employment through appropriate training or education, stating that Rebecca had primarily taken care of the minor children

during the parties' marriage and that she had only obtained employment shortly before the dissolution proceedings. *See* KRS 403.200(2)(b) and (e).

Moreover, while Travis testified that he brought home approximately $600.00-$800.00 per week, he states in his brief that his "monthly gross income" was $5,864.00 and his "monthly gross income after deductions" was $4,000.00. Black's Law Dictionary defines net income as "[t]otal income from all sources minus deductions, exemptions, and other tax reductions." *Net income*, BLACK'S LAW DICTIONARY (8th ed. 1990). Thus, even with a $4,000.00 net monthly income as claimed by Travis in his brief, after paying his child support and maintenance obligations, Travis would have approximately $2,673.00 left. Although that is a tight budget, we do not find reversible error in the court's analysis.

Moreover, we discern no abuse of discretion in the duration of the maintenance award. In light of the relatively short duration of the maintenance award, the trial court's award of maintenance did not prevent the parties from severing all ties for an unduly long time. Rather, the court afforded Rebecca a reasonable opportunity to transition from financial dependence on her former spouse to independence. *See Daunhauer v. Daunhauer*, 295 S.W.3d 154, 156 (Ky. App. 2009) (citation omitted) ("The goal of a maintenance award is to facilitate one's transition from dependence upon her former spouse to independence. This is

consistent with another goal of the dissolution process which is to sever all ties as much as possible as soon as possible.").

Additionally, far from being a method for the court to assign all the marital debt to Travis, the court's statement that the maintenance payments would allow Rebecca to pay the marital debt assigned to her considered the overall picture of Rebecca's financial situation. It is clear from the record that the trial court based the amount of monthly spousal maintenance on substantial evidence. Thus, we cannot say that the trial court clearly erred or abused its discretion in its maintenance award in this case.

## **CONCLUSION**

For the foregoing reasons, we affirm the Carter Circuit Court's Decree.

ALL CONCUR.


BRIEF FOR APPELLANT:

Robin L. Webb
Grayson, Kentucky

BRIEF FOR APPELLEE:

MaLenda S. Haynes
Grayson, Kentucky

-12-